UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOANNE E. FRASURE, | : | |
|     Plaintiff, | : | |
| | : | |
| | : | |
| v. | : | Civil No. 3:00cv2407 (WIG) |
| | : | |
| ANTHONY J. PRINCIPI, | : | |
| SECRETARY OF VETERANS | : | |
| AFFAIRS, | : | |
|     Defendant. | : | SEPTEMBER 7, 2004 |

**PLAINTIFF'S ADDITIONAL BRIEFING WITH REGARD
TO HER OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

I.  *Pertinent Facts*

It is undisputed that the defendant employed the plaintiff in the position of "Medical Clerk" from March 21, 1988 to May 19, 2000 when the defendant terminated her employment[1]. Prior to her termination, the defendant published a promotion announcement for the position of "Lead Medical Clerk". *(Defendant's Exhibit 12).* The position of Lead Medical Clerk had a grade level of 6/7. *(Defendant's Exhibit 12).* On the other hand, the position of Medical Clerk carried a grade level of 5. *(Defendant's Exhibit 7).* The plaintiff filed an application for promotion to the position of Lead Medical Clerk. *(Defendant's Exhibit 12).* When she was not

---

[1] The plaintiff was terminated on May 12, 2000 effective May 19, 2000.

selected for promotion, the plaintiff filed a grievance through her union complaining about her non-selection. As the defendant states in its original Local Rule 56(a)1 Statement at ¶ 27, "[o]n June 21, 1999, plaintiff filed a written grievance with her union, the American Federation of Government Employee (AFGE), Local 1674, concerning her non-selection for the Lead Medical Clerk position." The plaintiff's grievance stated "as vets we need to know that we have a future, even if we have disabilities. Having a disability means we try harder to achieve and for advancement in the job." *(Defendant's Exhibit 17).*

After the plaintiff raised the presence of disability discrimination in her grievance, the defendant, for the very first time, after accommodating the plaintiff for over two years, asserted that the accommodations it had provided her were placing an undue burden on the Agency. In a letter dated October 28, 1999, the Agency asserted that "[a]lthough accommodations for non work-related conditions are normally limited to a period of six weeks, your restrictions were accommodated for over a year while OWCP issues were pending. All filing and chart work for your assigned block has been completed by employees on the following shift. This has placed an undue burden to the service and an adverse impact on its mission, as timely filing is essential to patient care." *(Defendant's Exhibit 2; Plaintiff's Dep. p. 219).* Prior to the plaintiff complaining that her non-selection to the position of lead medical clerk was the result of disability discrimination, the defendant had never voiced any issue with the accommodations that the plaintiff had been previously provided. *(Plaintiff's Dep. p. 219)* The plaintiff had been

accommodated for over two years without the Agency claiming that the accommodations were placing an undue burden on the Agency. *(Plaintiff's Dep. p. 219)*

Following the filing of her grievance, the plaintiff invoked the defendant's EEO process to complain that she had been the victim of disability discrimination. After the plaintiff was fired, she amended her initial complaint to include claims of retaliation and disability discrimination regarding her termination of employment. The plaintiff was notified of her termination on May 12, 2000, and she immediately moved to amend her complaint with the defendant under its EEO procedures on May 15, 2000. The amendments were accepted by the defendant's Office of Resolution Management on May 23, 2000. *(Exhibit 101)*[2]. The final amendment to the plaintiff's complaint was triggered by her termination. The amendment, which was accepted by the defendant's Office of Resolution Management, asserted that the plaintiff's firing was the result of both unlawful retaliation and unlawful discrimination. The defendant acknowledged that "[t]he precise claims now accepted for investigation are as follows:

...(C) Whether on the basis of disability and reprisal, you were treated in a disparate manner in matters of your removal..." *(Exhibit 101).*

As regards the grievance filed by the plaintiff regarding her non-selection, she is not aware any action taken by the defendant in response to her grievance. The Court employs the phrase, "abandonment of the grievance process" in additional briefing order. However, this

---

[2] Exhibit 101 mistakenly refers to the October 28, 1999 letter threatening to remove the plaintiff's accommodations as having been sent on October 28, 1998. In three places it describes the letter as being sent on October 28, 1988, and on two occasions it correctly refers to the letters as being sent on October 28, 1999.

3

phrase is not completely accurate. On the record before the Court, it appears that there was a joint recognition by the plaintiff and the defendant that the plaintiff's non-appointment could not be addressed through the grievance process. After the initial filing of the grievance, the plaintiff proceeded through the EEO process. It appears that no action ever took place on the grievance submitted by the plaintiff.[3] Nevertheless, when the plaintiff was terminated from her employment, she never invoked the grievance process, choosing, as it was her legal right, (see Exhibit 101 for an explanation of her rights), to proceed through the EEO process. The election of remedy defense simply does not apply to the plaintiff's claims emanating from her unlawful termination; it is relevant only as to her claim that her non-selection for a promotion was based on unlawful disability discrimination.

II.     *Legal Discussion*

The defendant has asserted the defense of "election of remedies" in responding to the plaintiff's disability and retaliation claims. The defense is inapplicable to the facts involved in the present case. First, it has no bearing on the plaintiff's cause of action asserting that her termination constituted both unlawful disability discrimination and unlawful retaliation. It is indisputable that the plaintiff did not grieve her termination through the collective bargaining agreement nor did she appeal to the Merit Systems Protection Board. She filed an amendment to her complaint through the EEO process, which amendment was accepted, thereby expanding her

---

[3] Regardless of whether the grievance was acted on, as discussed below, the subject matter of the plaintiff's grievance was pursuant to federal law excluded from matters for which a grievance could legitimately be filed.

original complaint to include the claims of discrimination and retaliation regarding her termination. *(Exhibit 101).* Further there can be no doubt that the amendment was timely filed; the plaintiff was notified of her termination on May 12, 2000 and she filed her amendment on May 15, 2000. As the letter *(Exhibit 101)* from the from the Office of Resolution Management indicates, prior to the charges filed by the plaintiff regarding her termination, the case was viewed by the defendant as a matter that could only be raised through the Equal Employment Opportunity process, not the grievance process. It was only when the defendant accepted the plaintiff's amendment did it become a "mixed case complaint". "It also should be stated that the complaint now is categorized as a mixed case complaint since the removal is appealable to the Merit Systems Protection Board. *(Exhibit 101).* The plaintiff elected to proceed with her complaint involving her termination through the EEO process and not appeal it either through the grievance process or to the Merit Systems Protection Board.

      Second, even if the amendment was solely viewed as an additional claim of retaliation based on the plaintiff's initial complaint that her non-selection for promotion to the position of Lead Medical Clerk was the result of disability discrimination, the retaliation claim would survive even if the Court determines the plaintiff had elected to proceed through the union grievance process, thereby denying the court jurisdiction of her initial claim. The plaintiff's complaint arises under the anti-retaliation provision of the Rehabilitation Act. "The ADA makes it unlawful for an employer to 'discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a

5

charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.' 42 U.S.C. § 12203(a). The Rehabilitation Act ... contain[s] similar provisions against retaliation and are governed in this respect by the same standards as the ADA. See 29 U.S.C. § 794(d); ...; *Weixel v. Board of Educ. of the City of New York,* 287 F.3d 138, 148-49 (2d Cir.2002) (elements of a retaliation claim under Rehabilitation Act are same as the ADA)..." *Treglia v. Town of Manlius,* 313 F.3d 713, 719 (2d Cir. 2002). The anti-retaliation protections are not restricted to formal complaints. In addition to protecting the filing of formal charges of discrimination, § 794(a)'s opposition clause protects as well informal protests of discriminatory employment practices, including making complaints to management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of co-workers who have filed formal charges. *See Grant v. Hazelett Strip-Casting Corp.,* 880 F.2d 1564, 1569 (2d Cir.1989), and Schlei & Grossman, *Employment Discrimination Law,* 548- 49 (1983)." *Sumner v. U.S. Postal Service*, 899 F.2d 203, 208, 209 (2d Cir. 1990). Therefore, even if he plaintiff had never filed an EEO complaint regarding her claim of disability discrimination involving her non-promotion, her opposition to the defendant's discriminatory practice would still be protected. Most certainly, it cannot be seriously argued that the defendant is free from strictures of the anti-retaliation provisions of the Rehabilitation Act to retaliate against an employee who complains through the collective bargaining grievance process about disability discrimination. The anti-retaliation provision protects an employee who complains about disability discrimination regardless of the forum. "A

6

plaintiff may prevail on a claim for retaliation even when the underlying conduct complained of was not in fact unlawful so long as he can establish that he possessed a good faith, reasonable belief that the underlying challenged actions of the employer violated the law." *Treglia v. Town of Manlius,* 313 F.3d at 719 (Internal citations and quotations omitted).  Since informal protests of disability discrimination are protected under the Act, opposition filed through a grievance complaint is likewise protected.  The plaintiff's grievance, which stated "as vets we need to know that we have a future, even if we have disabilities ... [h]aving a disability means we try harder to achieve and for advancement in the job", read in the overall context of her grievance, clearly raises her opposition to the disability discrimination that she believed resulted in her non-selection.  There is simply no reason based on policy considerations why the anti-retaliation provision of the Rehabilitation Act would not protect an employee who in good faith complains about disability discrimination through the grievance process from reprisals directed at him by his employer in retaliation for making such complaints.

  Third, under federal law, the plaintiff could not, as a matter of law, grieve her non-selection for promotion through the grievance process.  Despite the plaintiff's attempt at filing a grievance, federal law excluded the subject matter of the plaintiff's grievance from being pursued through the collective bargaining grievance process. (*Title 5 U.S.C. § 7121(c) (4)*).  Therefore, the plaintiff was free to pursue her complaint through the EEO process, including initiating the instant action.  The language of the grievance procedure specifically excludes from its coverage "[a]ny examination, certification or appointment". (Defendant's Exhibit 18)  The

reason for the exclusion is found in the provisions of Title 5 U.S.C. § 7121(c) (4) which asserts that a government union contract grievance procedure is not applicable to contest job appointments.  The plaintiff's grievance involved an appointment to the position of Lead Medical Clerk.  Therefore, the plaintiff's complaint regarding her non-appointment did not properly fall within the purview of the grievance procedure.  The defendant argues that the language of 5 U.S.C. § 7121(c) (4) applies only to initial appointments, and, therefore, since the promotion to Lead Medical Clerk was not an initial appointment, the language of the statute is not applicable.  See *Suzal v. Director, United States Information Agency,* 32 F.3d 574, 580 (D.C. Cir. 1994) ("[W]e read the word 'appointment' in the context of both statute and agreement to refer only to *initial* appointments, not to reappointments.  The FLRA appears to agree...").  However, *Suzal* involved the distinction drawn between an initial appointment and a non-renewal of an appointment.  The court found that refusing to renew an appointment to a position the employee already held was not the same as an appointment to the position.  In the present case, the plaintiff's appointment to the position of Lead Medical Clerk would have been an initial appointment even under the reasoning of *Suzal*.  The plaintiff never served in the position of Lead Medical Clerk.  If she had been promoted to the position, it unquestionably would have been an initial appointment.  The other cases cited by the defendant are, likewise, inapposite.  One case deals with the transfer to the same position but in a different locale, which is not at all similar to the facts of the present case.  *Brammer v. United States*, 24 Cl.Ct. 487,492 (1991).

Nevertheless, even if 5 U.S.C. § 7121(c) (4) is limited to the initial appointment into the federal service, the plaintiff is still excluded from filing a grievance regarding her non-selection for a promotion pursuant to the provisions of 5 C.F.R. § 335.103 (d), which provides, "[e]mployees have the right to file a complaint relating to a promotion action. Such complaints shall be resolved under appropriate grievance procedures. The standards for adjudicating complaints are set forth in part 300, subpart A, of this chapter. While the procedures used by an agency to identify and rank qualified candidates may be proper subjects for formal complaints or grievances, *nonselection from among a group of properly ranked and certified candidates is not an appropriate basis for a formal complaint or grievance.* There is no right of appeal of OPM, but OPM may conduct investigations of substantial violations of OPM requirements. (Emphasis added). In view of this regulation, which carries the force of law, *Adcock v. United States,* 203 Ct.Cl. 257, 1973 WL 21356 (Ct.Cl. 1973), it is indisputable that the grievance process was not a remedy available to the plaintiff to challenge her non-selection.

Even though the plaintiff initially filed a grievance regarding her non-promotion, since the matter was not grievable in the first instance thereby depriving any grievance board of jurisdiction over her claim, the plaintiff cannot be held to have made an election of remedies barring the present action. "In order for a party to be concluded by an election between two inconsistent remedies, both must, in fact, be open to him at the time he avails himself of a remedy. The fatuous choice of a fancied remedy that never existed, and its futile pursuit until the court adjudges that it never had existence is no defense to an action to enforce an actual remedy

9

inconsistent with that first invoked through mistake." *Kuhl v. Hayes,* 212 F.2d 37, 39 (10th Cir. 1954).  See also, *McKim v. Carre*, 83 P. 1105, 1106 (1905) ("In order for a party to be concluded by an election between two inconsistent remedies both must in fact be open to him.  The pursuit of a remedy which he supposes he possesses, but which in fact has no existence, is not an election between remedies, but a mistake as to what remedy he has, and will not prevent his subsequent recourse to whatever remedial right was originally available.  15 Cyc. 262; 7 Encycl. of P. & P. 366.").

    For the reasons stated above, the plaintiff is not precluded from proceeding with her action based on an "election of remedies" defense.  The defense simply does not apply to her complaint involving the termination of her employment, and it does not apply to her non-promotion because the grievance process is not an available remedy.

PLAINTIFF - JOANNE E. FRASURE

BY:_____
Thomas W. Bucci, Esquire
WILLINGER, WILLINGER & BUCCI, P.C.
855 Main Street
Bridgeport, CT  06604
Tel: (203) 366-3939
Fax: (203)337-4588
Email: tbucci@wwblaw.com
Federal Bar # ct07805

**CERTIFICATION OF SERVICE**

      This is to certify that a copy of the within and foregoing *Plaintiff's Addtional Briefing With Regard To Her Opposition To Defendant's Motion For Summary Judgment* was mailed via First -Class U.S. P.S. postage prepaid, on this 7th day of September 2004, to:

William M. Brown, Jr.
Assistant U.S. Attorney
Connecticut Financial Center
157 Church Street
P.O. Box 1824
New Haven, CT  06508
Tel: (203) 821-3700
Fed. Bar # ct01705

 

_____
Thomas W. Bucci