# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

-------------------------------------------------------

JOANNE E. FRASURE,                    :
                                   :

      Plaintiff              :

                                   :

v.                                    :          NO. 3:00cv2407(WIG)

                                   :

ANTHONY J. PRINCIPI,                  :
SECRETARY OF VETERANS                 :
AFFAIRS,                              :

                                   :

      Defendant              :

-------------------------------------------------------

## RULING ON DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

Currently pending is defendant's motion for summary judgment (Doc. #22).  This case

arises from the termination of plaintiff's employment with the Department of Veterans Affairs

("the V.A.").  The plaintiff alleges she was discriminated against by her employer on the basis of

her handicap in violation of section 501 of the Rehabilitation Act of 1973, 29 U.S.C. § 794,

which resulted in her non-selection for a promotion.  Furthermore, the plaintiff alleges that the

V.A. retaliated against her for challenging her non-selection by refusing to extend the

accommodations it had previously granted for her disability, and ultimately terminating her

employment.  Additionally, the plaintiff claims that the V.A. discriminated against her on the

basis of her disability when it terminated her employment.

The defendant's motion for summary judgment is hereby GRANTED as to plaintiff's

claim that discrimination by the V.A. resulted in her non-selection for a promotion, and DENIED as to plaintiff's retaliation claim and her discriminatory termination claim.

### Factual Background

The plaintiff, Joanne E. Frasure, born on January 8, 1948, was employed by the Veterans Affairs Connecticut Healthcare System ("the V.A.") as a Medical Clerk from March 21, 1988 through May 19, 2000, when she was terminated by the V.A. (Local Rule 56(a)1 Statement, ¶ 1.)  While employed with the V.A., Ms. Frasure had six different surgeries on both hands stemming from impairments and injuries that occurred during her earlier service in the military. (Pl.'s Dep. at 38.)  As a result of the surgeries, the plaintiff lost the use of the third through fifth fingers on her right hand, which remain in a clasped position on the palm of her hand. (Pl.'s Dep. at 55).  Thus, following the surgeries, Ms. Frasure was unable to perform work-related activities without appropriate accommodations.  (Pl.'s Dep. at 47.)  A note from her physician, Dr. Graner, dated August 24, 1998, listed the plaintiff's restrictions as follows: " . . . cannot write, breakdown charts, thin charts or lift any significant weight with her affected hands." (Local Rule 56(a)1 Statement, ¶ 3.)  These restrictions were continued by Dr. Graner on February 25, 1999, and September 29, 1999, as indicated by brief notes on his original letter. (Local Rule 56(a)1 Statement, ¶ 5.)

During March, 1999, the plaintiff filed an application for promotion from the position of Medical Clerk to the position of Lead Medical Clerk. (Local Rule 56(a)1 Statement, ¶ 17.)  The position of Medical Clerk had a grade level of 5 (Def.'s Ex. 7), while the position of Lead Medical Clerk had a grade level of 6/7. (Def.'s Ex. 12.)  The plaintiff was referred to the

selecting official, Linda Titus, for consideration. (Local Rule 56(a)1 Statement, ¶ 18.)  Each applicant, including the plaintiff, was then interviewed by a six-person panel. (Pl.'s Dep. at 103.)  The top three applicants, including the plaintiff, were then interviewed by Linda Titus. (Pl.'s Dep. at 103.)  On June 3, 1999, the V.A. notified Ms. Frasure that she had not been selected for the promotion, and that Linda Sheehan had instead been selected for the position.(Def.'s Ex. 15.)

The collective bargaining agreement that governed the plaintiff's employment with the V.A. specifically permitted allegations of discrimination to be raised in a negotiated grievance procedure, as described in Article 42 of that agreement, entitled "Grievance Procedure." (Def.'s Ex. 18.)  On June 21, 1999, Ms. Frasure filed a grievance complaint with the American Federation of Government Employees ("AFGE") regarding her non-selection for promotion to the position of Lead Medical Clerk. (Def.'s Ex. 17.)

On August 18, 1999, Ms. Frasure received a "Proposed Reprimand (14 Day Notice)" from Linda Titus,  alleging her "failure to comply with a proper order from a supervisor," stemming from an incident where Ms. Frasure allegedly refused to attend a meeting held by Linda Sheehan. (Def.'s Ex. 20.)  Subsequently, Ms. Frasure received a letter informing her of the V.A.'s decision to reprimand her for the reasons stated in the Proposed Reprimand. (Def.'s Ex. 21.)

On October 28, 1999, the V.A. issued a letter to Ms. Frasure requesting documentation from her physician regarding her medical condition and her ability to perform the duties required in her position as a Medical Clerk. (Pl.'s Ex. A.)  In this letter, the V.A. stated that prolonged accommodation of the plaintiff's physical restrictions presented an undue burden on

the V.A.'s Nursing and Patient Care Service, and acknowledged that "although accommodations for non work-related conditions are normally limited to a period of six months, [plaintiff's] restrictions were accommodated for over a year . . . ." (Pl.'s Ex. A.)  The V.A. sent another letter to Ms. Frasure on December 15, 1999, stating, *inter alia*, that she had failed to provide the medical information requested in the October 28, 1999 letter. (Pl.'s Ex. B.)  Moreover, the V.A. stated that its intent in writing the letter was to make Ms. Frasure aware of her options "before initiating any action directed toward proposing [her] removal from employment." (Def.'s Ex. 10.)  According to this letter, Ms. Frasure's options included her right to resign from employment with the V.A., and her right to file an application for disability retirement if her physician would certify that her condition was likely to continue beyond a year. (Def.'s Ex. 10.)

On November 29, 1999, Ms. Frasure first contacted the V.A. Office of Resolution Management. (Local Rule 56(a)(1) Statement, ¶ 29.)  According to the information provided on her Initial Contact Sheet, Ms. Frasure had also contacted the V.A. Connecticut EEO Manager, Christine Covington, on November 23, 1999. (Local Rule 56(a)(1) Statement, ¶ 30.)  On December 2, 1999, Ms. Frasure was interviewed by EEO Counselor Karen Kubik. (Local Rule 56(a)(1) Statement, ¶ 34.)  According to the Counselor's Report of February 8, 2000, Ms. Frasure alleged disability discrimination based upon working conditions, failure to promote, and an October 28, 1999 letter "accusing plaintiff of being a burden to her Service." (Local Rule 56(a)(1) Statement, ¶ 35.)  Ms. Frasure filed her formal discrimination complaint with the V.A. Office of Resolution Management on January 12, 2000. (Local Rule 56(a)(1) Statement, ¶ 42.)  On the EEO complaint form, Ms. Frasure gave a negative response to the question, "Have you filed a union grievance on any of the issue(s) listed [in this complaint]?" by placing an "X" in

4

the box labeled "No," despite the fact that she had filed a union grievance on June 21, 1999.

(Def.'s Ex. 24).

On March 22, 2000, the V.A. sent a "Proposed Removal (30 Day Notice)" to Ms.

Frasure alleging several conduct-related reasons for her proposed removal. (Def.'s Ex. 5.)  The

allegations against Ms. Frasure listed in the V.A.'s March 22, 2000, letter included "inability to

perform the essential duties of [the] position," "failure to comply with a proper order from a

management official," "disrespectful conduct toward a management official," "attempting to

inflict bodily injury to another," "disrespectful conduct toward [a] team leader," "disrespectful

conduct toward [a] supervisor," "disrespectful conduct toward a fellow employee," "negligence

of duties," "failure to follow a supervisory order," and "use of obscene language to a caller."

(Def.'s Ex. 5.)  Ms. Frasure provided an oral response to the Proposed Removal Notice, as

documented by AFGE representative Richard N. Daniels. (Def.'s Ex. 25.)  Additionally, the

plaintiff's attorney responded by letter on April 13, 2000 to refute the accusations against the

plaintiff alleged in the V.A.'s March 22, 2000, letter. (Pl.'s Ex. 1)  Ultimately, on May 12, 2000,

the V.A. notified Ms. Frasure of its decision to terminate her employment effective May 19,

2000. (Pl.'s Ex. D.)

### **Standard of Review**

A court may grant summary judgment if it determines that there are no genuine issues of

material fact based on a review of the pleadings, depositions, answers to interrogatories,

admissions on file, and affidavits.  Fed. R. Civ. P. 56(c).  The moving party bears the burden of

demonstrating the absence of a genuine issue of material fact.  Adickes v. S. H. Kress & Co.,

398 U.S. 144, 157 (1970). The court should construe the facts in a light most favorable to the

non-moving party, and should resolve all ambiguities and draw all reasonable inferences against

the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Matsushita Elec.

Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In the absence of a genuine issue

of material fact, the moving party is entitled to summary judgment as a matter of law. Celotex

Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Although caution must be exercised before granting summary judgment to an employer

in a discrimination case where discriminatory intent and state of mind are at issue, the Second

Circuit has stated that, "the salutary purposes of summary judgment - avoiding protracted,

expensive and harassing trials - apply no less to discrimination cases than to . . . other areas of

litigation." See Carlton v. Mystic Transp., Inc., 202 F.3d 129, 134 (2nd Cir. 2000); Abdu-

Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2nd Cir.)(quoting Meiri v. Dacon, 759 F.2d

989, 998 (2nd Cir. 1985)), cert. denied, 534 U.S. 993 (2001). Furthermore, the Supreme Court

has reiterated that trial courts should not treat discrimination differently from other ultimate

questions of fact. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 148 (2000)

(internal quotation marks and citations omitted).

**Discussion**

I.   Failure to Promote

Relying on 5 U.S.C. § 7121(d)[1], the defendant asserts that it is entitled to summary

---

[1]According to 5 U.S.C. § 7121(d), an aggrieved employee affected by a prohibited
personnel practice under 5 U.S.C. § 2302(b)(1)(which includes discrimination on the basis of a
handicapping condition as prohibited by the Rehabilitation Act), which also falls under the
coverage of the negotiated grievance procedure, "may raise the matter under a statutory

judgment as a matter of law because the plaintiff has failed to exhaust her administrative

remedies in pursuit of her claims against the defendant.  The defendant contends that because

the plaintiff filed a grievance complaint on June 21, 1999 with the AFGE regarding her non-

selection for promotion, plaintiff is precluded from pursing her complaint in this court until she

has exhausted her administrative remedies through the grievance procedure.  The plaintiff

responds that exhaution is not required because the discrimination involved an "appointment,"

which, according to 5 U.S.C. § 7121(c)(4)[2], is beyond the scope of the grievance procedure.

Alternatively, the plaintiff argues that her non-selection was not a proper subject for a grievance

procedure under 5 C.F.R. § 335.103(d).

A.    Plaintiff's Failure to Exhaust Her Union Grievance Remedies

Federal law and EEOC regulations set forth special rules for discrimination claims

brought by federal employees covered by collective bargaining agreements.  Wright v. Snow,

No. 02 Civ. 7615, 2004 WL 1907687, at *4 (S.D.N.Y. Aug. 25, 2004).  The Federal Labor-

Management Relations Act provides that a federal employee may raise claims of discrimination

under a negotiated grievance procedure or in a Title VII complaint, but not both. 5 U.S.C. §

7121(d); Upshur v. Summers, No. 00 Civ. 2061, 2001 WL 274037, at *3 (S.D.N.Y. Mar. 20,

2001).  The EEOC regulations implementing the statute further provide that:

> When a person is employed by an agency subject to 5 U.S.C. 7121(d) and is covered
> by a collective bargaining agreement that permits allegations of discrimination to be

procedure or the negotiated procedure, but not both."

[2] According to 5 U.S.C. § 7121(c)(4), "the preceding subsections of this section shall not
apply with respect to any grievance concerning . . . any examination, certification, or
appointment."

> raised in a negotiated grievance procedure, a person wishing to file a complaint or a grievance on a matter of alleged employment discrimination must elect to raise the matter under either part 1614 [Federal Sector Equal Employment Opportunity regulations], or the negotiated grievance procedure, but not both.

29 C.F.R. § 1614.301(a). The initial choice between the statutory scheme or the negotiated grievance process is an irrevocable one. Fernandez v. Ridge, No. 04 Civ. 1899, 2004 WL 3088664, at *5 (E.D.N.Y. Dec. 17, 2004) (citing O'Dwyer v. Snow, No. 00 Civ. 8918, 2004 WL 444534, at *8 (S.D.N.Y. March 10, 2004)). Whichever route the employee chooses, she must then exhaust that administrative remedy before pursuing her claim in court. O'Dwyer, 2004 WL 444534, at *7.

The employee is deemed to have elected to pursue a union grievance procedure when she timely files a grievance in writing in accordance with the negotiated grievance procedure. 5 U.S.C. § 7121(d); O'Dwyer, 2004 WL 444534, at *7. Alternatively, the employee is considered to have initiated a statutory action when she timely files a written complaint with the EEO Office of the appropriate agency. 29 C.F.R. § 1614.301(a); Upshur, 2001 WL 274037, at *3.

In response to her non-selection for promotion from Medical Clerk to Lead Medical Clerk, the plaintiff filed a written grievance complaint against the V.A. with the AFGE on June 21, 1999. (Def.'s Ex. 17.) The filing of this formal, written grievance constituted the plaintiff's irrevocable election to pursue her complaint through the union procedures. O'Dwyer, 2004 WL 444534, at *8; see also Vinieratos v. United States, 939 F.2d 762, 769 (9th Cir. 1991). Subsequent to the filing of this union grievance, the plaintiff filed a formal complaint of discrimination with the V.A. Office of Resolution Management on January 12, 2000 alleging, inter alia, that she had been denied a promotion as a result of disability discrimination. (Def.'s

Ex. 24.)  However, the plaintiff had already elected in June, 1999, to pursue her complaint through the negotiated grievance procedure, and was thereby precluded from pursuing the statutory EEO procedure until she had exhausted her initial election of remedies.  Thus, the plaintiff's complaint regarding her non-selection for promotion is not actionable in this court unless the plaintiff has exhausted the administrative remedies available to her under the union's collective bargaining agreement.  See O'Dwyer, 2004 WL 444534, at *8.

The collective bargaining agreement which governed the plaintiff's employment allowed her to raise claims of discrimination, and established a four-step grievance procedure for doing so. (Grievance Procedure, Article 42, Section 7.)  First, the employee must present the grievance in writing to her supervisor within thirty (30) days of the alleged discriminatory act, and meet with the supervisor who must then provide a written answer within fourteen (14) calendar days of receipt of the grievance.  If the matter is still not resolved, the aggrieved party shall then present the grievance to the Service/Division Chief in writing, and the Chief shall meet with the employee and provide a written answer.  Third, if a mutually satisfactory settlement still has not been reached, the aggrieved party shall submit the grievance to the Director in writing, and the Director shall meet with the employee and provide a written decision.  Finally, if the matter remains unresolved, the grievance may be referred to arbitration. (Grievance Procedure, Article 42, Section 7.)

The plaintiff in the present case did not follow the four-step grievance procedure.  Instead, she abandoned the union procedures after filing her initial grievance complaint on June 21, 1999.   In other words, the plaintiff abandoned the union procedures after step one.  Having chosen to commence the negotiated grievance procedure, the plaintiff was responsible for

exhausting it before bringing a claim in this court.  The plaintiff did not do so.  Thus, unless one

of the exceptions to the exhaustion requirement applies, the plaintiff is precluded from bringing

this discrimination claim in this court.  See O'Dwyer, 2004 WL 444534, at *8 (having failed to

exhaust grievance procedure, plaintiff barred from pursuing claims in district court); Fernandez,

2004 WL 3088664, at *6 (having pursued the negotiated grievance procedure, plaintiff's failure

to appeal union decision to the EEOC precluded employee's action in district court as plaintiff

failed to exhaust administrative remedies).


    B.    Plaintiff's Claims Do Not Involve an "Appointment" Under 5 U.S.C. § 7121(c)(4)

The plaintiff contends that her non-selection for promotion involved an "appointment" as

described in 5 U.S.C. § 7121(c)(4), and was, therefore, beyond the scope of the negotiated

grievance procedure which governed her employment with the V.A.  The plaintiff concludes

that, because the grievance procedure was not available to her to challenge her non-selection,

she cannot be deemed to have made an election of remedies that bars the present action.  This

court, however, disagrees with plaintiff's contention that her non-selection for promotion

involved an "appointment" for the purpose of 5 U.S.C. § 7121(c)(4).

According to 5 U.S.C. § 7121(c)(4), a grievance procedure under a collective bargaining

agreement may not extend to any grievance concerning an "examination, certification, or

appointment."  However, the courts have held that the term "appointment," for the purpose of

this statute, relates solely to the initial appointment into the federal service.  See, e.g., Suzal v.

Director, United States Information Agency, 32 F.3d 574, 580 (D.C. Cir. 1994)(holding that

employee's grievance regarding the non-renewal of his appointment was not precluded from

grievance procedure as "appointment" referred only to initial appointment); <u>National Fed'n of Fed. Employees Local 1636 v. United States Dep't. of Defense, Nat'l Guard Bur.</u>, 48 F.L.R.A. 511, 513-514, 1993 WL 364501, at **3 (F.L.R.A. Sept. 13, 1993) ("appointment" relates to the initial entry of an applicant to the Federal service); <u>U.S. Dep't. of Defense Office of Dependent Schools and Overseas Education Association</u>, 45 F.L.R.A 1411, 1416, 1992 WL 311980, at **5 (F.L.R.A. Sept. 30, 1992) (teachers' grievance regarding Agency's failure to convert their temporary positions to permanent positions did not concern the initial appointments of the grievants, and therefore did not involve an "appointment").

The plaintiff had been employed with the V.A. as a Medical Clerk for approximately eleven years when she applied for a promotion to Lead Medical Clerk in March, 1999.  Because the plaintiff was already an employee of the federal service, a promotion from the position of Medical Clerk to the position of Lead Medical Clerk would not constitute an initial appointment into the Federal service.  Thus, the plaintiff's non-selection for promotion did not involve an "appointment" for the purpose of 5 U.S.C. § 7121(c)(4).  As a result, the plaintiff was not precluded from challenging her non-selection under the grievance procedure, and, once she elected to proceed under that procedure, was required to exhaust the administrative remedies available to her prior to filing this court action.

    C.    <u>Plaintiff Was Not Precluded from Challenging Her Non-Selection for Promotion Based on Disability Discrimination Under the Negotiated Grievance Procedure</u>

Alternatively, the plaintiff claims that 5 C.F.R. § 335.103(d) precluded her from filing a grievance regarding her non-selection for a promotion.  This regulation provides, in pertinent part, that:

> Employees have the right to file a complaint relating to a promotion action.
> Such complaints shall be resolved under appropriate grievance procedures.
> The standards for adjudicating complaints are set forth in part 300, subpart A,
> of this chapter.  While the procedures used by an agency to identify and rank
> qualified candidates may be proper subjects for formal complaints or
> grievances, nonselection from among a group of properly ranked and certified
> candidates is not an appropriate basis for a formal complaint or grievance.

5 C.F.R. § 335.103(d).  Here, the plaintiff is not complaining that she was not selected from a

group of properly ranked candidates.  Her complaint is that she was discriminated against in the

selection process because of her disability.  Section 335.103(d), on which the plaintiff relies,

specifically provides that "[e]mployees have the right to file a complaint relating to a promotion

action."  This the plaintiff did.  Furthermore, the collective bargaining agreement that governed

the plaintiff's employment with the V.A. specifically permitted allegations of discrimination to

be raised in a negotiated grievance procedure.  Thus, Ms. Frasure was not precluded from

raising claims of discrimination resulting in non-selection for promotion in her grievance

complaint filed on June 21, 1999 with the AFGE.

Accordingly, the court grants summary judgment in favor of the defendant as a matter of

law on the plaintiff's discrimination claim based on her non-selection for promotion.

II.    <u>Retaliation</u>

The plaintiff further alleges that the V.A. retaliated against her for challenging her non-

selection by refusing to extend the accommodations it had previously granted for her disability,

and ultimately terminating her employment.  To state a prima facie case of retaliation under

either the Americans with Disabilities Act (ADA) or the Rehabilitation Act, a plaintiff must

demonstrate that "(1) he or she engaged in an activity protected by the [Act]; (2) the employer

was aware of this activity; (3) the employer took adverse employment action against him or her; and (4) a causal connection exists between the alleged adverse action and the protected activity." Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002). A plaintiff's burden at this prima facie stage is *de minimis*. Id.; see Richardson v. New York State Dept. of Correctional Serv., 180 F.3d 426, 444 (2d Cir.1999).

In the instant case, Ms. Frasure's attempts to assert her rights against discriminatory treatment, including the filing of a grievance with the AFGE on June 21, 1999 and a formal discrimination complaint with the V.A. Office of Resolution Management on January 12, 2000, are protected activities under the Rehabilitation Act. See Sumner v. United States Postal Serv., 899 F.2d 203, 209 (2nd Cir.1990) (protected activities include "making complaints to management"). The V.A. does not claim that Ms. Frasure's activity was unprotected, nor does the V.A. dispute that it knew of Ms. Frasure's grievance filing and EEO complaint. Thus, the plaintiff has established the first and second elements of a prima facie case of retaliation.

As to the third element, the Second Circuit has established that an "adverse employment action" includes discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand. Treglia, 313 F.3d at 720 (citing Morris v. Lindau, 196 F.3d 102, 110 (2nd Cir.1999) (defining adverse action to include "discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand"). Furthermore, that court has stated that the standard for an adverse employment action is a "materially adverse change in the terms, privileges, duration and conditions of employment." Treglia, 313 F.3d at 720. It is undisputed that, on May 12, 2000, the V.A. notified Ms. Frasure of its decision to terminate her employment effective May 19, 2000. (Pl.'s Ex. D.) Additionally, it is undisputed that the V.A. sent Ms. Frasure a "Proposed

13

Reprimand (14 Day Notice)" on August 18, 1999, and subsequently notified Ms. Frasure of its decision to reprimand her for allegedly "fail[ing] to comply with an order from a supervisor." (Def.'s Ex. 21.)  As discharge from employment and reprimand constitute adverse employment actions, the plaintiff has established the third element of a prima facie case of retaliation.

     In order to establish the final element of a prima facie case of retaliation, the plaintiff must show that a reasonable jury could infer a retaliatory motive or intent behind the employer's adverse actions.  See Treglia, 313 F.3d at 720.  A retaliatory motive is one that is at least a "substantial"or "motivating" factor behind the adverse action.  Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977).  The plaintiff may prove that retaliation was a "substantial" or  "motivating" factor behind an adverse employment action either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment . . . ; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by defendant." Raniola v. Bratton, 243 F.3d 610, 625 (2nd Cir. 2001) (citing Gordon v. New York City Bd. of Educ., 232 F.3d 111, 117 (2nd Cir. 2000)).

     The Second Circuit has held that the requisite causal connection can be established by showing a close temporal relationship between the protected activity and the adverse action. See  Treglia, 313 F.3d at 721, ("temporal proximity between [] protected activity in February 1998 and allegedly adverse employment actions in March 1998 is sufficient to establish the required causal link for a prima facie case"); Cifra General Electric Co., 252 F.3d 205, 217 (2nd Cir. 2001) (requisite causal connection shown where plaintiff was fired twenty (20) days after employer learned plaintiff had hired attorney to pursue claims of gender discrimination);  Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1178 (2nd Cir.1996) (requisite causal connection shown

14

where the time between plaintiff's initial complaint and her discharge was a mere twelve (12)

days); Manoharan v. Columbia University College of Physicians & Surgeons, 842 F.2d 590, 593

(2nd Cir.1988) ("Proof of the causal connection can be established indirectly by showing that the

protected activity was closely followed in time by the adverse action.").

Ms. Frasure filed her initial grievance complaint on June 21, 1999, and was notified by the

V.A. of a proposed reprimand for her behavior less than two months later, on August 18, 1999.

The plaintiff claims that, in her twelve years of employment with the V.A., she had never before

been the subject of any disciplinary action regarding her work behavior.  Furthermore, the

plaintiff filed a formal EEO complaint with the V.A. Office of Resolution Management on

January 12, 2000, and was subsequently notified of her proposed termination on March 22, 2000

and her termination on May 12, 2000.  Given that the plaintiff's burden of establishing a prima

facie case of retaliation has been classified by the Second Circuit as *de minimis,* see Treglia, 313

F.3d at 719, and that the facts must be viewed in a light most favorable to Ms. Frasure on this

motion for summary judgment, the court finds that the plaintiff has met her prima facie burden.

Once the plaintiff makes out a prima facie case of retaliation, the defendant then has the

burden of producing evidence that it had a non-retaliatory reason for its action.  Texas Dep't of

Community Affairs v. Burdine, 450 U.S. 248, 253-255 (1981).  The burden of proof, however,

remains with the plaintiff to prove that the defendant's articulated reasons are a pretext for

unlawful retaliation.  See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 518 (1993); see also

Burdine, 450 U.S. at 256.  In its letter dated March, 22, 2000, the V.A. advanced several non-

discriminatory reasons for the adverse actions taken against Ms. Frasure, including her failure to

comply with orders from management, use of obscene language to a caller, disrespectful

15

conduct toward her superiors and fellow employees, and an attempt to inflict bodily injury to another.  In response, the plaintiff points out the V.A.'s delay in bringing these conduct-related issues to her attention.  The V.A.'s letter to Ms. Frasure proposing her removal was dated March 22, 2000; however, the incidents referred to in the letter occurred months earlier, during December 1999 and January 2000.  Additionally, the V.A. offered as non-discriminatory reasons for Ms. Frasure's removal her inability to perform the essential duties of her position, and her failure to provide requested medical information pertaining to her restrictions and need for accommodations.  In response, Ms. Frasure claims that the V.A. had sufficient medical records to provide her with the appropriate accommodations to perform the essential duties of her position for two years, and that her medical condition had not changed.  Ms. Frasure had not requested new or additional accommodations, but had only requested a continuation of those accommodations already in place.  The defendant has not shown undue hardship in continuing these accommodations.

Accordingly, this court finds that the plaintiff has offered sufficient evidence to establish a genuine issue of material fact as to whether the V.A's proffered reasons for her removal were a pretext for retaliation.  The existence of disputed factual issues precludes summary judgment on the plaintiff's retaliation claim.

III.    Disability Discrimination

Additionally, the plaintiff claims that the termination of her employment with the V.A. was motivated by disability discrimination.  To establish a prima facie case of employment discrimination under the Rehabilitation Act, a plaintiff must prove that: (1) she is an "individual

16

with a disability," (2) she was "otherwise qualified" for the position, (3) she was denied that position on the basis of her disability, and (4) the employer receives federal funds. See D'Amico v. City of New York, 132 F.3d 145, 150 (2d Cir.1998).

The term "individual with a disability" is defined in the Rehabilitation Act as any person who "(i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment." 29 U.S.C. § 705(20)(B). The Second Circuit utilizes a two-prong inquiry to determine whether one is disabled under the Act. Heilweil v. Mount Sinai Hosp., 32 F.3d 718, 722 (2nd Cir. 1994), cert. denied, 513 U.S. 1147 (1995). First, the Court must determine whether the plaintiff has a physical or mental impairment. Id. Second, the Court must analyze whether the impairment substantially limits one or more of that person's major life activities. Heilweil, 32 F.3d at 722.

According to the regulations promulgated under the Act, "major life activities" include "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 45 C.F.R. § 84.3(j)(2)(ii); see also 28 C.F.R. § 41.31(b)(2) (same). As stated by the United States Supreme Court, this list is illustrative, not exhaustive. Bragdon v. Abbot, 524 U.S. 624, 639 (1998). Accordingly, the Second Circuit has identified other major life activities, including, but not limited to, "sitting, standing, lifting, or reaching." Ryan v. Grae & Rybicki, 135 F.3d 867, 870 (2nd Cir.1998) (quoting U.S. Equal Employment Opportunity Commission, Americans with Disabilities Act Handbook I-27 (1992)). Furthermore, the Second Circuit has recognized the remedial nature of the Rehabilitation Act, and has held that the regulations promulgated under it are to be construed

17

broadly.  Heilweil, 32 F.3d at 722 (citing Gilbert v. Frank, 949 F.2d 637, 641 (2nd Cir. 1991)).

In the present case, neither party disputes that the plaintiff has a physical impairment within the meaning of the Act[3], and the first prong of the inquiry to determine whether Ms. Frasure is disabled under the Act is thereby satisfied.  A disputed issued of fact remains with respect to the second prong of this inquiry.  Ms. Frasure argues that her impairment substantially limits one or more of her major life activities, while the V.A. asserts that Ms. Frasure's limitations are not "substantial" within the meaning of the statute.

The United States Supreme Court has stated that "the phrase 'substantially limits' suggests 'considerable' or 'to a large degree,' and precludes impairments that interfere only in a minor way . . .".  Totota Motor Mfg., Ky., Inc. V. Williams, 534 U.S. 184, 196 (2002).  Furthermore, the Court held that it is "insufficient for individuals attempting to prove disability status . . . to merely submit evidence of a medical diagnosis of an impairment." Id. at 198.

Whether an individual is substantially limited with respect to a major life activity is a mixed question of law and fact in the Second Circuit.  Bartlett v. New York State Board of Law Examiners, 226 F.3d 69, 80 (2nd Cir. 1998).   In the instant case, the question of whether Ms. Frasure is substantially limited such that she is "disabled" under the Rehabilitation Act cannot be resolved on the present record as a matter of law.

The plaintiff relies on a note from her physician listing her work restrictions to support that she is substantially limited in the major life activity of working.  Additionally, the plaintiff

---

[3]  The regulations promulgated under the Rehabilitation Act define "physical or mental impairment" as "any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting the . . . musculoskeletal [sytem]."  45 C.F.R. § 84.3(j)(2)(i)(A); see also 28 C.F.R. § 41.31(b)(1)(I) (same).

relies on her deposition testimony that she is unable to perform household tasks such as cooking, mopping, and dusting following the surgeries on her hands. (Pl.'s Dep. at 44-46.)  The defendant points out, however, that Ms. Frasure refused to provide additional medical information in accordance with the V.A.'s request in a letter dated October 28, 1999.  Thus, the only medical information before this court with respect to the plaintiff's impairment is the note from the plaintiff's physician listing her work restrictions.  As a result, the issue of substantial impairment cannot be resolved as a matter of law, and there remains a genuine issue of material fact for a jury as to whether the plaintiff is "disabled" under the Rehabilitation Act. See Hescox v. Niagara Wheatfield Central School District, 12 Fed.Appx. 86, 90 (2nd Cir. 2001) (Factual issue of whether plaintiff's condition substantially limited his ability to conduct major life activities correctly decided by jury).

Even if Ms. Frasure is an "individual with a disability" under the Act, there exists a genuine issue of material fact as to whether she has established that she was "otherwise qualified" to perform her job.  Ms. Frasure maintains that, with the accommodations provided by the V.A., she was capable of performing the essential functions of her job.  The V.A., on the other hand, asserts that, because the plaintiff failed to provide medical information requested by the V.A., there is no credible evidence of any accommodation that would assist the plaintiff in performing the essential functions of her job.

The United States Supreme Court has held that a plaintiff cannot be considered "otherwise qualified" unless she is able, with or without assistance, to perform the essential functions of the job in question.  School Board of Nassau County v. Arline, 480 U.S. 273, 287 n.17 (1987).  The plaintiff was provided with accommodations which allowed her to perform in her position for

two years, but the evidence suggests that, at times, the plaintiff was restricted to "light duty" or that she required the assistance of other employees to accomplish certain tasks.  Thus, this court finds a genuine issue of material fact as to whether the plaintiff has established that she was "otherwise qualified" to perform her job.

Assuming that the plaintiff can meet her burden of proving that she was "disabled" and was "otherwise qualified" to perform her job with a reasonable accommodation, for the reasons discussed above, the court finds genuine issues of fact as to whether the plaintiff was discharged because of her disability.  As discussed earlier in this opinion with regard to the plaintiff's retaliation claim, the V.A. asserted in its letter dated March 22, 2000, distinct charges of misconduct supporting the termination of Ms. Frasure's employment.  The V.A. claims that these conduct-related reasons for removal disprove any allegation that the plaintiff was discharged because of her disability.  Ms. Frasure, however, alleges that these charges were fabricated by the V.A., and were a mere pretext for the V.A.'s discharging her because of her disability, in violation of the Rehabilitation Act.

A plaintiff need not demonstrate that his or her disability was the sole cause of the employer's actions, but only that the disability played a "substantial" role that "made a difference" to his or her employer's actions.  Parker v. Sony Pictures Entertainment, Inc., 260 F.3d 100, 108 (2nd Cir. 2001) (citing Fields v. New York State Office of Mental Retardation and Developmental Disabilitites, 115 F.3d 116, 120 (2nd Cir. 1997)).  In Parker, the Second Circuit found that the district court had correctly left this question of fact to be resolved by a jury. Id. Here, this court likewise finds that there is sufficient evidence in the record -- for the reasons noted in relation to the retaliation claim -- to raise an issue of fact as to whether Ms. Frasure's

handicap was a motivating factor in her discharge, thereby precluding summary judgment on this claim.

Finding genuine issues of material fact, this court denies the defendant's motion for summary judgment with respect to the plaintiff's claim that the termination of her employment by the V.A. was motivated by disability discrimination.

**Conclusion**:

Because the plaintiff initially elected to challenge her non-selection for promotion under the negotiated grievance procedure but failed to exhaust the administrative remedies available to her under that procedure, the plaintiff is precluded from pursuing this matter in this court. Thus, the defendant's motion for summary judgment for lack of subject matter jurisdiction is hereby GRANTED as to plaintiff's claim alleging disability discrimination resulting in her non-selection for promotion.

Based upon the parties' 56(a)1 and 56(a)2 Statements of Undisputed Issues of Material Fact, affidavits, deposition testimony, exhibits and legal memoranda, this court finds that there are disputed issues of material fact that preclude entry of summary judgment as to plaintiff's retaliation claim and disability discrimination claim relating to her termination.  Therefore, the defendant's motion for summary judgment is DENIED as to these claims.

SO ORDERED, this __29th__ day of April, 2005 at Bridgeport, Connecticut.


___*/s/ William I. Garfinkel*_____
William I. Garfinkel
United States Magistrate Judge