**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| JOANNE E. FRASURE, | : | Civil No. 3:00cv2407 (WIG) |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| R. JAMES NICHOLSON, | : | |
| SECRETARY OF VETERANS | : | |
| AFFAIRS, | : | |
| Defendant. | : | AUGUST 12, 2005 |

**JOINT TRIAL MEMORANDUM**

   Pursuant to the Standing Order Regarding Trial Memoranda in Civil Cases and this

Court's order dated June 20, 2005, the parties respectfully submit this memorandum.  The

defendant's motion for summary judgment was granted in part and denied in part by this Court

on April 29, 2005.  A date for jury selection has not been set.

Trial Counsel:   For the plaintiff:

Thomas W. Bucci
Fed. Bar No. ct07805
Willinger, Willinger & Bucci, P.C.
855 Main Street, 5th Floor
Bridgeport, Connecticut  06604
(203) 366-3939

For the defendant:

Carolyn A. Ikari
Assistant U.S. Attorney
450 Main Street, Room 328
Hartford, Connecticut  06103
(860) 947-1101
Fed. Bar No. ct13437


Jurisdiction:                      Jurisdiction arises under the Rehabilitation Act of 1973, 298
                                    U.S.C. § 794a and 28 U.S.C. § 1331.

Jury/Nonjury:                      This is a jury trial.

                                    Defendant contends that these disability discrimination and

                                    retaliation claims are to be tried to a jury for determination of

                                    liability and compensatory damages only.  Back pay is to be

                                    determined by the court.  See 42 U.S.C. § 1981a; Endorsement

                                    Order, Boyajian v. Runyon, Civ. No. 3:93CV1959(AWT), (D.

                                    Conn. Apr. 15, 1998) at 2-4, citing Dailey v. Societe Generale, 889

                                    F. Sup. 108, 111 (S.D.N.Y. 1995), aff'd, 108 F.3d 451 (2d Cir.

                                    1997).


Nature of case:           Federal employment discrimination.

<u>Defendant's Proposed Stipulations</u>:

As of March 22, 2000, Plaintiff was employed at the VA Connecticut Healthcare System ("VA"), West Haven (CT) campus, as a Medical Clerk, GS-5.

Plaintiff worked full time on the day shift.

Bernadette Montano was not on the committee that interviewed applicants for the Lead Medical Clerk position.

Linda Titus was the Selecting Official for the Lead Medical Clerk position.

In September 1999, Plaintiff was issued a reprimand for failure to comply with a proper order from a supervisor.

On November 1, 1999, Plaintiff received a letter from Nancy K. Cabanas, Chief, Human Resources Management Service, requesting certain medical information be released to the VA's Employee Health Unit.

On March 31, 2000, Plaintiff received a letter from Linda M. Titus, R.N., notifying Plaintiff of her proposed removal.

On May 13, 2000, Plaintiff received a letter from Paul J. McCool, Healthcare System Director, sustaining the proposed removal.

Plaintiff's removal from employment was effective May 19, 2000.

<u>Plaintiff's contentions</u>:

*First Cause of Action – Disability Discrimination*

1.    The plaintiff suffers from physical impairments to the ulnar nerves in both of her arms, which impairments were caused by the trauma to her hands and arms while performing her duties as a tank mechanic as a member of the United States Army.  Since May of 1997, the plaintiff underwent six surgical procedures, all of which were performed while the plaintiff was employed by the defendant, including ulnar transposition and carpal ligament release, in an effort to relieve the severe pain that the plaintiff experienced on a daily basis in both of her arms.  As a consequence of the surgeries the plaintiff lost use of the third through fifth fingers on her right hand.  The fingers are in a permanently clasped position.  After the surgeries, the three fingers are incapable of movement; they stay on the palm of the plaintiff's hand.

2.    The resulting immobility of the three fingers on the plaintiff's dominant hand and the severe pain that radiates through her arms and hands substantially limit one or more major life activities.

3.    The plaintiff is restricted in performing the major life activity of "performing manual tasks"; she cannot cook, clean, dust, mop or perform household chores.  Likewise, the plaintiff is restricted in performing the major life activity of "working."  The plaintiff

cannot perform work of a secretarial nature, where typing or note-taking is required. She cannot perform assembly-line work, work as a waitress, or work as a mechanic, her previous profession.

4. The plaintiff had an unblemished work record over a period of twelve years of employment in the position of medical clerk in the employ of the defendant. The plaintiff received step and grade increases based on her successful employment record. She was consistently rated in her annual performance evaluations as meeting and exceeding the requirements of the position of medical clerk.

5. Even after undergoing six surgeries with resulting impairments to her hands and arms, the defendant never raised an issue with the quality of the plaintiff's job performance.

6. Even with her physical impairments, the plaintiff, with accommodations made for her impairments, capably performed her job duties.

7. The plaintiff is an individual with a disability who was otherwise qualified to perform her job duties as a medical clerk with a reasonable accommodation, and who was terminated by the defendant as a result of her disability.

8. The defendant, after accommodating the plaintiff for more than two years, asserted, for the very first time in a letter dated October 28, 1999, that the accommodations it had provided the plaintiff were placing an undue burden on the defendant. The defendant

claimed that "[a]lthough accommodations for non work-related conditions are normally limited to a period of six weeks, your restrictions were accommodated for over a year while OWCP issues were pending.  All filing and chart work for your assigned block has been completed by employees on the following shift.  This has placed an undue burden to the service and an adverse impact on its mission, as timely filing is essential to patient care."

9.     In spite of her disability, the plaintiff continued to perform the essential functions of the medical clerk position.

10.    Since 1997, the defendant had accommodated the plaintiff's disabilities.  She was provided a little basket cart, similar to those found in a supermarket in which she could place the heavy medical charts and transport them to the head nurse's office or the doctor's office for dictation.

11.    Since 1997, the defendant provided the plaintiff with accommodations with regard to the use of ringed file binders, the telephone and her office environment so as to allow the plaintiff to perform the essential functions of her job.  The plaintiff would have her fellow employees assist her in opening the binders, and if no one was around to assist her, the plaintiff was provided a tool to open the rings on the binder.  The mere holding of a telephone caused the plaintiff grave difficulties.  As an accommodation the defendant

provided the plaintiff with a headset so that she didn't have to pick up the telephone, all she had to do was push a button and pick up the call.

12.    After the plaintiff's last surgery, the defendant's ergonomics division, a couple of days before she was to report back to duty, reorganized the plaintiff's office so that she would be able to perform the essential functions of her job using her left arm and hand.  Since the plaintiff could not use her right hand, her office was made left hand friendly, including reorienting the patient's ID card stamp, the computer and the telephone.

13.    With the accommodations, the plaintiff capably performed the entire range of the duties assigned to her.  She learned to perform her duties in a different fashion, but she, nevertheless, performed the essential duties of her position.

14.    The defendant had no legitimate basis for ending the accommodations it had provided the plaintiff; its reasons for discontinuing the accommodations were not believable and untrue.

15.    The assertion that the defendant tolerated the accommodations beyond six weeks "while OWCP issues were pending" is false;  the plaintiff never claimed her injuries were job related and that would be the only basis for OWCP involvement.

16.     Similarly, the defendant's assertion that "all filing and chart work for your assigned block has been completed by employees on the following shift," is untrue. The plaintiff had always performed her assigned tasks.

17.     The plaintiff had submitted sufficient medical information to the defendant justifying the accommodations to which she had been accorded by the defendant. The defendant's insistence on additional medical information regarding the plaintiff's medical condition was unreasonable and intended to interfere with the plaintiff's accommodations.

18.     As indicated in its October 28, 1999-letter to the plaintiff, the defendant, one month earlier, had received a medical note from the plaintiff's doctor, which updated an earlier letter dated August 24, 1998. In its October 28, 1999-letter, the defendant did not explain why, after receiving an update only one month earlier, another update was required. The August 24, 1998-doctor's letter had last been updated on February 25, 1999, a period of six months. The February, 25, 1999-medical letter was again updated on October 28, 1999, a period of eight months. There simply was no legitimate reason for requesting an additional medical report only one month from the last report when periods of six months to eight months elapsed before the medical report were previously updated other than to interfere with the accommodations that had been put in place for the plaintiff.

19.    In response to the letter sent by the defendant to the plaintiff on October 28, 1999, the plaintiff met with representatives of the defendant and fully discussed the accommodations she needed as a result of her disabilities.  The plaintiff had previously provided the defendant with the necessary medical information in response to the defendant's request.  Further, the defendant had in its possession the plaintiff's medical records which responded completely to its own inquiry.  At her meeting with the officials of the defendant, the plaintiff assured them that they had in their possession the records that dealt with her medical conditions, and that there were no other records available.  The plaintiff also fully discussed her medical condition and the accommodations she required.

20.    It was on December 16, 1999, the defendant sent the plaintiff a second letter in which it threatened to terminate the plaintiff's employment, "[b]efore initiating any action directed toward proposing your removal from employment …," unless the plaintiff voluntarily left the employment of the defendant either by way of disability retirement or resignation.

21.    On March 22, 2000, the defendant issued a letter to the plaintiff referenced as Proposed Removal (30) Day Notice in which it listed numerous reasons for terminating the plaintiff's employment.  In a career with the defendant beginning in 1988, as with her

earlier career as a member of the `United States` Army, the plaintiff had never been the subject of disciplinary action of any type. The alleged acts of misconduct identified by the defendant in the March 22, 2000-letter occurred during the time span of December 17, 1999 through January 13, 2000. The time span is concurrent with the efforts of the defendant to force the plaintiff out of her job either by way of a disability retirement or resignation.

22.     A review of the defendant's conduct in reaction to the plaintiff's alleged misdeeds clearly demonstrates that the reasons offered by the defendant for terminating the plaintiff's employment are not credible. As the plaintiff was allegedly partaking in serious misconduct, she was never counseled or warned or disciplined by the defendant. Most certainly, an egregious act of "attempting to inflict bodily harm on another," allegedly occurring on December 30, 1999, would have been dealt with much sooner than March 22, 2000. It was not until March 22, 2000 that the defendant raised these issues for the first time as reasons on which the plaintiff's termination was being based.

23.     Not a single accusation contained in the March 22, 2000-letter is factual. Each charge is a fabrication, relying on half-truths and misstatements. In particular, the accusation, "inability to perform the essential duties of your position," is proven false by the evidence that the plaintiff carried on her tasks for two years after her surgery without any

complaint that she was not performing her job or that the accommodations provided to
her had created an undue burden on the defendant.

24.     Similarly, the allegation, "failure to comply with a proper order from management,"
concerns the plaintiff's legitimate right to refuse to sign that she "accepted" the letter of
December 17, 1999 and to meet with her supervisor without union representation.  The
charge, "disrespectful conduct toward a management official," is, likewise, without
factual support.  The twofold accusation, "(i) attempting to inflict bodily injury to
another, and (ii) disrespectful conduct toward your team leader," are baseless.  To wait
almost three months to address a charge as serious as "attempting to inflict bodily harm,"
in and of itself refutes the legitimacy of the claim.  Nevertheless, the plaintiff lacked the
physical strength to push a cart into another person.  The final allegations, "disrespectful
conduct toward your supervisor," (Plaintiff's Dep. pp. 159-164) "(i) disrespectful conduct
toward a fellow employee and (ii) negligence of duties," (Plaintiff's Dep. pp. 164-165),
and "(i) failure to follow a supervisory order and (ii) use of obscene language" as with the
others, are just as incredible.  The allegations are disproved by the plaintiff's explanation
of events, as well as the belated timing of the accusations.

25.     It was only after the plaintiff withstood the efforts of the defendant to force her to resign
or retire as communicated in the defendant's letter of December 16, 1999, did the

11

defendant charge the plaintiff with multiple allegations of misconduct.  For twelve years, the plaintiff had never been accused of any wrongdoing.  Now, in a single month, December 17, 1999 through January 13, 2000, the defendant charged that the plaintiff had committed ten separate incidents of misconduct.  Most telling, the defendant did not counsel or warn the plaintiff while she was allegedly perpetrating this misconduct.  It waited more than two months to even inform the plaintiff of the misbehavior allegations.  It was not until March 22, 2000 that the defendant raised these issues as reasons on which the plaintiff's termination was being considered.

26.     Most certainly, as an egregious act as that of "attempting to inflict bodily harm on another," allegedly occurring on December 30, 1999, would have been dealt with much sooner than March 22, 2000.

27.     With the very first letter to the plaintiff, the defendant evidenced an obsession with the plaintiff's impairments.  Its belated attempts to turn the plaintiff's firing into a discharge for disciplinary reasons do not conceal the defendant's true motive, its unwillingness to accommodate the plaintiff's physical impairments any further.

28.     The reasons advanced by the defendant for taking away the accommodations the defendant had provided the plaintiff for two years are pretexts for unlawful disability discrimination.  The plaintiff could perform the essential functions of her job with the

accommodations that the defendant had been providing her.  These accommodations did not place an undue burden on the defendant.  The plaintiff's termination was a prohibited act of disability discrimination.

I.    *Second Cause of Action - Retaliation*

1.    During March 1999, the plaintiff filed an application for promotion to the position of Lead Medical Clerk.

2.    On June 21, 1999, the plaintiff objected to the defendant's refusal to promote her to the position of Lead Medical Clerk, alleging in a grievance which she had filed with the defendant, that she was the victim of unlawful disability discrimination.

3.    On August 18, 1999, in retaliation for filing a complaint of disability discrimination, the plaintiff received a "Proposed Reprimand (14 Day Notice)" from Linda Titus, a representative of the defendant, alleging her "failure to comply with a proper order from a supervisor, "stemming from an incident where the plaintiff allegedly refused to attend a meeting held by Linda Sheehan.  (Def.'s Ex. 20.) Subsequently, the plaintiff received a letter informing her of the V.A.'s decision to reprimand her for the reasons stated in the Proposed Reprimand.

4.    In further retaliation against the plaintiff the defendant on October 28, 1999, issued a letter to the plaintiff requesting documentation from her physician regarding her medical

condition and her ability to perform the duties required in her position as a Medical Clerk.  In this letter, the defendant stated that prolonged accommodation of the plaintiff's physical restrictions presented an undue burden on the V.A.'s Nursing and Patient Care Service, and acknowledged that "although accommodations for non work-related conditions are normally limited to a period of six months, [plaintiff's] restrictions were accommodated for over a year . . ."

5.    The defendant sent another letter to the plaintiff on December 15, 1999, stating, *inter alia*, that she had failed to provide the medical information requested in the October 28, 1999-letter.  Moreover, the defendant stated that its intent in writing the letter was to make the plaintiff aware of her options "before initiating any action directed toward proposing [her] removal from employment."  According to this letter, the plaintiff's options included her right to resign from employment with the V.A., and her right to file an application for disability retirement if her physician would certify that her condition was likely to continue beyond a year.

6.    The plaintiff filed a formal disability discrimination complaint with the V.A. Office of Resolution Management on January 12, 2000.

7.    On March 22, 2000, the defendant sent a "Proposed Removal (30 Day Notice)" to the plaintiff alleging several conduct-related reasons for her proposed removal.  The

14

allegations against the plaintiff listed in the defendant's March 22, 2000-letter included "inability to perform the essential duties of [the] position," "failure to comply with a proper order from a management official," "disrespectful conduct toward a management official," "attempting to inflict bodily injury to another," "disrespectful conduct toward [a] team leader," "disrespectful conduct toward [a] supervisor," "disrespectful conduct toward a fellow employee," "negligence of duties," "failure to follow a supervisory order," and "use of obscene language to a caller."

8.   The plaintiff provided an oral response to the Proposed Removal Notice, as documented by AFGE representative Richard N. Daniels.  Additionally, the plaintiff's attorney responded by letter on April 13, 2000 to refute the accusations against the plaintiff alleged in the V.A.'s March 22, 2000, letter.  Ultimately, on May 12, 2000, the defendant notified the plaintiff of its decision to terminate her employment effective May 19, 2000.

9.   The plaintiff's efforts to assert her rights against disability discriminatory treatment, including the filing of a grievance with the AFGE on June 21, 1999 and a formal discrimination complaint with the V.A. Office of Resolution Management on January 12, 2000, are protected activities under the Rehabilitation Act.

10.  Prior to filing her complaint regarding the lead medical clerk position, the defendant had never voiced a concern with the accommodations it had previously provided the plaintiff.

11.    The defendant had accommodated the plaintiff for two years without the defendant ever claiming that the accommodations were placing an undue burden on its operations.

12.    Only after the plaintiff complained about the rejection of her request for promotion to the lead position did the defendant find fault with the plaintiff's job performance as well as with the accommodations it had provided the plaintiff.

13.    The letter sent to the plaintiff on October 28, 1999, was clearly unusual.  As the letter indicates, the defendant had received, one month earlier, a medical note from the plaintiff's doctor, which updated an earlier letter, dated August 24, 1998.  The defendant did not reveal in the letter the reason it required the letter to be updated only one month after it had been previously updated.  The August 24, 1998-letter had been updated on February 25, 1999, a period of six months.  The February, 25, 1999-letter was again updated on October 28, 1999, a period of eight months.  Neither the October 28, 1999-letter, nor any other record submitted by the defendant, indicates the urgency for a new medical report one month from the last report.  The defendant's assertion that "[y]our restrictions had been accommodated for over a year while you had issues pending with the Office of Workmen's Compensation (OWCP)," is clearly untrue.  The plaintiff had no issues pending with OWCP.  The plaintiff had been accommodated for two years

without incident or question.  The situation changed dramatically once the plaintiff
asserted that she had been the victim of disability discrimination.

14.    It was only after the plaintiff withstood the defendant's efforts to coerce her into
resignation or retirement as communicated in the defendant's letter of December 16,
1999, did the defendant charge the plaintiff with multiple allegations of misconduct.  For
twelve years, the plaintiff had never been accused of any wrongdoing.  Then, in a single
month, December 17, 1999 through January 13, 2000, the defendant charged that the
plaintiff had committed ten separate incidents of misconduct.  Most telling, the defendant
did not counsel or warn the plaintiff while she was allegedly perpetrating this
misconduct.  It waited more than two months to even inform the plaintiff of the
misbehavior allegations.  It was not until March 22, 2000 that the defendant raised these
issues as reasons on which the plaintiff's termination was being considered.  Most
certainly, as an egregious act as that of "attempting to inflict bodily harm on another,"
allegedly occurring on December 30, 1999, would have been dealt with much sooner than
March 22, 2000.  Not a single charge contained in the March 22, 2000-letter is factual.
Each charge is a fabrication, relying on half-truths and misstatements.  The reasons for
terminating the plaintiff's employment were pretexts to justify the unlawful retaliatory
conduct of the defendant.

Defendant's contentions:

In 1999, the plaintiff was Medical Clerk at the VA Connecticut Healthcare System ("VA") with ten years' experience.  In July 1999, Plaintiff was informed that she had not been selected for a promotion to a newly-created position, Lead Medical Clerk.  From that time on, Plaintiff engaged in an extended campaign of hostility in an attempt to voice her displeasure and undermine the successful applicant.  By July 1999, the matter escalated to the point where Plaintiff refused to attend the regular team meetings called by the new Lead Medical Clerk.  Plaintiff was disciplined for this and received a Letter of Reprimand.

As with her reprimand, Plaintiff's own conduct led to her removal.  Plaintiff refused to answer a "7-point letter."  Plaintiff had a physical impairment to both hands and arms that had been the subject of past worker's compensation claims that were closed.  Plaintiff presented the VA with a one-sentence doctor's note continuing her medical restriction that she "cannot write, breakdown charts, thin charts or lift a significant weight with her affected hands."  At that point, evening and night staff was covering all the filing and chart work that Plaintiff was unable to do.  Given that the possibility that the hand/arm impairment was work-related was ruled out, it was necessary for the VA to clarify the medical basis for Plaintiff's restrictions, particularly with respect to duration and permanency, as filing and chart work are a key part of a Medical Clerk's

job.

The 7-point letter, issued in the ordinary course of business pursuant to Human Resources policies and procedures, initiates a process by which medical restrictions are harmonized, if possible, with an employee's job duties and job status. To protect patient confidentiality, the employee is requested to release their medical information to the VA's Employee Health Unit. Without a release, the Employee Health Unit does not have access to an employee's health records, even if they are a patient at the VA, as was Plaintiff. The Employee Health Unit is a separate service from management and Human Resources, staffed principally by a physician who reviews the employee's medical information released and provided in response to the 7-point letter. Without revealing the medical details, the Employee Medical Service then advises VA management and Human Resources whether the employee can safely perform the essential functions of her job without violating any medical restrictions. Plaintiff's failure to respond to the 7-point letter left the VA with no option but removal, as the records on hand showed a current physician's restriction prohibiting her from performing one of the key duties of a Medical Clerk, filing and handling charts.

Still enraged over her non-selection and further offended by the 7-point letter, Plaintiff became her own worst enemy. Her overt insubordination, refusal to perform her job, rude conduct, and obscene language escalated despite union and management intervention to try to

make the situation work.

Ultimately, Plaintiff was removed from her VA employment for both an inability to perform the essential functions of the position and a variety of on-the-job misconduct, including physically assaulting the Lead Medical Clerk and saying "F*** you" before hanging up on an outside caller.

Plaintiff is not disabled because her physical impairment at the time of her removal did not substantially limit her in a major life activity.

Plaintiff was not otherwise qualified as a Medical Clerk because she was medically restricted from performing essential functions of the position.

Plaintiff failed to fulfill her obligation to engage in a good-faith exchange regarding reasonable accommodation.

The accommodation sought by Plaintiff was not a reasonable accommodation.

The accommodation sought by Plaintiff presented an undue burden on the VA Connecticut Healthcare System.

Plaintiff's removal was for legitimate, nondiscriminatory and non-retaliatory business reasons.

Plaintiff was not discriminated against or retaliated against by the VA.

Plaintiff's Statement of Legal issues:

1.    Under the provisions of the Rehabilitation Act, whether the plaintiff was an individual with a disability?

2.    Whether the plaintiff has a physical impairment and whether the impairment substantially limits one or more of the person's major life activities?

3.    Whether the plaintiff was otherwise qualified to perform the essential functions of the position of medical clerk?

4.    Whether, with reasonable accommodations, the plaintiff was capable of performing the essential functions of the medical clerk position?

5.    Whether the plaintiff's disability played a substantial role that made a difference in the defendant's decision to terminate the plaintiff's employment as a medical clerk?

6.    Whether the reasons given by the defendant for terminating the plaintiff's employment were a pretext for unlawful disability discrimination?

7.    Whether the plaintiff was terminated on account of her disability?

8.    Whether the plaintiff's complaint of disability discrimination filed internally with the defendant regarding her non-promotion to the position of lead medical clerk   was a substantial or motivating factor behind the defendant's decision to terminate the plaintiff's employment as a medical clerk?

9.    Whether the defendant terminated the plaintiff's employment on account of her

participation in activity protected under the provisions of the Rehabilitation Act?

10.    Whether the reasons, which were advanced by the defendant for explaining its

termination of the plaintiff's employment as a medical clerk, were a pretext for unlawful

disability discrimination?


Defendant's Statement of Legal Issues:

Defendant contends that the back pay calculation is to be performed by the Court, not the

jury.  The jury sits solely to decide liability and compensatory damages.  42 U.S.C. § 1981a(c);

Endorsement Order, Boyajian v. Runyon, Civ. No. 3:93CV1959(AWT) (D. Conn. Apr. 15,

1998) at 2-4, citing Dailey v. Societe Generale, 889 F. Sup. 108, 111 (S.D.N.Y. 1995), aff'd, 108

F.3d 451 (2d Cir. 1997).


Plaintiff's proposed voir dire questions:

1.    Have you, or any members of your family, ever worked for the United States Department

of Veterans Affairs?

2.    Have you, or any members of your family, ever worked for an agency of the United

States of America?

3.      Do you know any person who was ever employed by United States Department of

        Veterans Affairs?

4.      Do you know any person who was ever employed by United States Department of

        Veterans Affairs?

5.      Do you believe that employees should be treated the same by an employer without regard

        to their disabilities if they are able to perform their job tasks?

6.      Have you or any members of your family ever been treated less favorably at work for

        what you believe to be for reasons other than your job performance?

7.      Have you ever felt that you had been the subject of discrimination?

8.      Do you believe that people can be injured by being discriminated against in the

        workplace?

9.      Would you have any reservations in awarding monetary damages for emotional distress?

10.      Have you ever held a position entailing supervisory responsibility including the right to

        hire, fire, discharge, discipline and/or reprimand employees?  If, so, please describe your

        position, when you held the position and your duties in that position.

11.     This case involves allegations of discrimination based disability.  Have you or has any

        close friend or relative had any personal experience that would make it difficult for you

        to consider such claims impartially and fairly with respect to all parties?

12.     Do you have any opinion about lawsuits involving claims of discrimination generally, or employment discrimination in particular, that might affect how you would consider the evidence in this case or might influence your ability to be fair and impartial in this case?

13.     Have you, or any members of your family, ever been terminated or denied a job opportunity or contract extension by your/his/her employer?  If the answer to the foregoing question is yes, do you feel that you/such person was treated unfairly, and if so, why?  Do you feel that the treatment by that employer might affect your ability to judge this case fairly and impartially, and if so, in what way?

14.     Have you, or any members of your family, ever filed a complaint or lawsuit against your/his/her employer or been involved, as a party or a witness, in a lawsuit against an employer?  If the answer to the foregoing question is yes, what was the nature and circumstances of the complaint?  Do you think that your experience regarding the complaint and its result might affect your ability to judge this case fairly, and if so, in what way?

15.     Have you, or any members of your family, ever been treated unfairly by your/his/her employer because of age, race, national origin, color, gender, disability or religious association?  If so, please provide the details and state whether this might affect your ability to judge this case fairly and impartially.

16.     Have you, or any members of your family, ever sued or been sued in a lawsuit?  If so, please provide details and state whether this might affect your ability to judge this case fairly and, if so, in what way.

17.     Have you, or any members of your family, ever been a witness in a lawsuit?  If so, please provide the details and state whether this experience might affect your ability to judge this case fairly, and if so, in what way.

18.     Have you, or any member of your family,  ever been the subject of a complaint which involved an allegation that you or a member of your family had discriminated against another individual on the basis of that individual's age, race, national origin, color, gender, disability or religious association?

19.     Are you currently employed?  If so, where are you currently employed?  What is your current position?  How long have you held that job?  How long have you been employed by your current employer?

20.     Do you believe you are more familiar than the average lay person with the courts and legal process?  If so, please explain the basis for your greater familiarity with the courts or legal process and state whether this greater familiarity will have any affect on your ability to sit as a juror in this case or be fair to all parties in this case.

21.     Have you read or seen anything in the media which has affected your opinion about the fairness of the jury system or the propriety of the size of jury verdicts?

22.     Are you aware of any bias or prejudice that you may have in regard to this case, or in favor of, or against, any of the parties?

Defendant's proposed voir dire questions:

1.     When the jurors recite their basic information, including their employment, please have them state how long they have been with their present employer (or how long their period of unemployment has been) and how long their spouse has been with their present employer. Alternatively: If you are employed, how long have you worked for your current employer?  If you are unemployed, how long have you been unemployed?  If you have a spouse or a partner, how long have they been working for their current employer/unemployed?

2.     Have you or a family member (or any other person close to you) ever been fired or laid off or been threatened with firing or lay off?  Who was it and how long ago did this happen?  How did this affect, if at all, how you think employees should be treated by employers in general?

3.     Have you or a family member (or any other person close to you) ever been

suspended, reprimanded or disciplined at work?  Who was it and how long ago did this happen?

How did this affect, if at all, how you think employees should be treated by employers in

general?

4.      Have you or a family member (or any other person close to you) ever been

discriminated against or harassed at work or at school on the basis of sex, race, ethnicity,

physical disability, mental illness, age, religion or sexual orientation?  What happened?  Was a

case, claim, charge, or investigation begun?  What was the result?

5.      Have you or a family member (or any other person close to you) ever been

accused of discriminating against or harassing someone at work or at school on the basis of sex,

race, ethnicity, physical disability, mental illness, age, religion or sexual orientation?  What

happened?  Was a case, claim, charge, or investigation begun?  What was the result?

6.      Do you think that if an employee files a claim of discrimination that the employer

probably did discriminate against the employee?  Why or why not?

7.      Have you or anyone in your family ever been employed by the Department of

Veterans Affairs or any of its on-site contractors?  Who and when?  What job?  How did that

employment end?

8.      Have you or anyone in your family or anyone close to you ever been a patient at a

Department of Veterans Affairs healthcare facility or hospital, including the VA Connecticut

Healthcare System?  If so, who, when, and where?  Were there any problems with their care or their interaction with the VA?  Are they presently a VA patient?

9.      Have you or anyone in your family ever been involved in any case, contested claim, dispute, or prosecution with (1) Department of Veterans Affairs, (2) the United States Attorney's Office or the Department of Justice, or (4) the United States government (also called the federal government) or any federal government agencies?  What is or was that dispute?  When was it?  What was the result?

10.     Have you or any member of your family ever been involved in a lawsuit, either as a party or a witness?  What was it?  Was it an employment dispute?  When?  What was the result?  Did you agree with the result?

11.     Have you had any prior jury service?  If so, what did the case involve?  Was it an employment dispute?  When and where was this trial?  What was the result?  Is there anything about your previous jury service that would affect your jury service in this case?


12.     Is there any reason at all, however private or personal, which makes you feel that you should not serve or would not like to serve on the jury for this case?  If so, please indicate this so that you can explain your concern to the judge and the lawyers privately.

<u>Plaintiff's Witnesses</u>:

1.      Linda M. Titus, address presently unknown; Ms. Titus is expected to testify as an adverse witness concerning the events leading to as well as the reason behind the plaintiff's termination.  Ms. Titus will also be questioned as to the reasons she took no disciplinary action against the plaintiff in light of her accusations that the plaintiff had been guilty of numerous incidents of misconduct.  Ms. Titus will also be questioned regarding the accommodations that had been provided the plaintiff, which were later withdrawn.  Additionally, Ms. Titus will be questioned regarding the allegations of wrongdoing of which she accused the plaintiff.

2.      Bernadette R. Montano, address presently unknown; Ms. Montano is expected to testify as an adverse witness concerning the events leading to as well as the reason behind the plaintiff's termination.  Ms. Montano will also be questioned regarding the accommodations that had been provided the plaintiff, which were later withdrawn.  Further, Ms. Montano will be questioned about the claims that the plaintiff was terminated as a result of numerous acts of misconduct.  Additionally, inquiry will be made of Ms. Montano as to the accuracy of the performance evaluations she prepared with regard to the plaintiff's job performance.

3.      Virginia L. Christensen, address presently unknown; Ms. Christensen will be questioned

as an adverse witness regarding the role she played in the termination of the plaintiff's

employment.

Defendant's Witnesses:

Diana Lynn Batts, New Haven, Connecticut.  Expected to testify regarding Plaintiff's conduct on the telephone.  (10 minutes)

Nancy Cabanas, Wethersfield, Connecticut.  Expected to testify regarding personnel policies and requirements and Plaintiff's personnel actions.  (One hour)

Ardie Gooch, VAMC West Haven, West Haven, Connecticut.  Expected to testify regarding statements by Plaintiff during a management-union meeting.  (10 minutes)

Jonathan Guest, New Haven, Connecticut.  Expected to testify regarding Plaintiff's conduct on the telephone.  (15 minutes)

Paul McCool, Newcastle, Maine.  Expected to testify regarding Plaintiff's removal. (One-half hour)

Bernadette Montano, VAMC West Haven, West Haven, Connecticut.  Expected to testify regarding Plaintiff's conduct after Linda Sheehan was selected for Lead Medical Clerk, Plaintiff's worker's compensation status, Plaintiff's claimed medical restrictions, supervision of Plaintiff and Plaintiff's conduct at work, complaints about Plaintiff, communications with Plaintiff, discipline of Plaintiff, and removal of Plaintiff.  (Two hours)

Blase Price, VAMC West Haven, West Haven, Connecticut.  Expected to testify regarding complaints about Plaintiff's conduct on the telephone and communications with Plaintiff.  (10 minutes)

Gayatri Rao, Trumbull, Connecticut. Expected to testify re ergonomic adjustments made for Plaintiff and another medical clerk.  (20 minutes)

Mirta Rosa, VAMC West Haven, West Haven, Connecticut.  Expected to testify regarding Plaintiff's conduct at work.  (10 minutes)

Linda Sheehan, Orange, Connecticut.  Expected to testify regarding Plaintiff's conduct after Linda Sheehan was selected for Lead Medical Clerk.  (One hour)

Linda Titus, Guilford, Connecticut. Expected to testify regarding Plaintiff's worker's compensation status, Plaintiff's claimed medical restrictions, complaints about Plaintiff, supervision of Plaintiff, communications with Plaintiff, discipline of Plaintiff, removal of Plaintiff, and Plaintiff's conduct.  (Two hours)

Margaret Veazey, VAMC West Haven, West Haven, Connecticut.  Expected to testify regarding removal of Plaintiff.  (One-half hour)

Virginia Weller f/k/a Virginia Christensen, VAMC Philadelphia, Philadelphia, PA.  Expected to testify concerning worker's compensation, light duty, limited duty, reasonable accommodation, the "seven point" letter; and Plaintiff's removal.  (Two hours)

Colleen White, VAMC West Haven, West Haven, Connecticut.  Expected to testify regarding a telephone conversation with Plaintiff.  (5 minutes)

Kathleen Yuckienuz, VAMC West Haven, West Haven, Connecticut.  Expected to testify regarding shift of job duties from Plaintiff to other medical clerks and VA efforts related to Carlton Riddick's and Plaintiff's workstation ergonomics.  (45 minutes)

Plaintiff's Exhibits:

1.     Transfer Form dated 2/1/95 re Joanne Erasure.

2.     Performance Evaluation re Joanne Erasure for period 4-1-99 to 3-31-2000.

3.     Performance Evaluation re Joanne Erasure for period 4-1-98 to 3-31-1999.

4.     Performance Evaluation re Joanne Erasure for period 4-1-97 to 3-31-1998.

5.     Performance Evaluation re Joanne Erasure for period 4-1-96 to 3-31-1997.

6.     Report of Contact dated 10-1-96.

7.     Performance Evaluation re Joanne Erasure for period 4-1-95 to 3-31-1996.

8.     Performance Evaluation re Joanne Erasure for period 2-6-95 to 5-6-95.

9.     Notification of Personnel Action dated 4-1-99.

10.    Medical Record - Consultation Sheet dated 1-29-97.

11.    Medical Record - Consultation Sheet dated 1-29-97.

12.    Medical Record - Consultation Sheet dated 9-15-97.

13.    Medical Record - Consultation Sheet dated 9-16-97.

14.    Confidential Ad Hoc Summary - Surgery Reports re Joanne E. Erasure.

15.    Medical Record - Consultation Sheet dated 10-20-97.

16.    Medical Report dated 2-23-98 of Dr. Wahl, M.D. Orthopaedic Surgery.

17.    Hospital Records for Surgical Procedure Performed on the Plaintiff on June 17, 1997.

18.     Medical Progress Notes from 8-18-97 to 10-20-97.

19.     Medical Report dated 8-24-98 Authored by Jonathan Graner, M.D.

20.     Medical Report dated 2-25-99 Authored by Jonathan Graner, M.D.

21.     Medical Report dated 9-29-99 Authored by Jonathan Graner, M.D.

22.     Disability Rating Decision dated July 12, 1999.

23.     Proposed Reprimand dated August 18, 1999.

24.     Reprimand Received by the Plaintiff on September 2, 1999.

25.     Mail Messages Commencing September 13, 1999.

26.     Mail Messages Commencing September 8, 1999.

27.     Letter to Joanne E. Erasure dated October 28, 1999.

28.     Memo dated November 15, 1999 From Linda Sheehan to Linda Titus.

29.     Letter dated December 18, 1999 from Nancy K. Cabanas to Joanne E. Erasure.

30.     Letter dated March 22, 2000 from Linda Titus to Joanne E. Erasure.

31.     Letter dated April 13, 2000 from Thomas W. Bucci, Esq. to Linda M. Titus.

32.     Letter dated May 12, 2000 from Paul J. McCool to Joanne E. Frasure.

<u>Defendant's Exhibits</u>:

*Note:   Social security numbers on all exhibits will be redacted prior to trial.*

Exhibit RF.          Removal Folder, Joanne Frasure, VA Connecticut Healthcare System,

West Haven, Connecticut.

*From left-hand side of Removal Folder:*

Exhibit RF-1.       One page print-out entitled "Nursing Service, Duty Station 689"
                    containing "Personal Information" for Joanne E. Frasure, undated.

Exhibit RF-2.       Routing and Transmission Slip, dated May 4, 2000, entitled "Decision on
                    Proposed Adverse Action, AFGE Employee," from "Virginia" and
                    addressed to "Mr. McCool" and requesting that the enclosed letter (see
                    next item below) be signed by him and routed to: 05B, 05, and 001 (Marge
                    V.) and 00 for their approval.

Exhibit RF-3.       Undated and unsigned three page letter attached to routing slip above,
                    addressed to Ms. Joanne E. Frasure, subject: removal.  Routed on 05/4/00
                    and initialed by V. Christensen, 05B, 05, 001 (M. Veazey) and 00.

Exhibit RF-4.       One Page Routing and Transmission Slip, dated January 21, 2000, entitled
                    "AFGE Discipline or Proposed Action" from "V. Christensen" and
                    addressed to "Service Chief (Line Manager)" routed to 05B, 05, 05B1
                    (Virginia Christensen) and 118.

Exhibit RF-5.       One page, undated and unsigned printout entitled "Analysis of Response
                    to Proposed Removal" that contains the analyses of Rich Daniels and
                    Virginia Christensen.

Exhibit RF-6.       Undated three page letter signed by Linda M. Titus, R.N., highlighted and
                    with hand-written corrections, addressed to Joanne E. Frasure, "Subject:
                    Proposed Removal (30 Day Notice)" routed on 03/08/00 and initialed by
                    V. Christensen, 05B, 05, 118 (L. Titus).  Stamped "Human Resources
                    Copy."

Exhibit RF-7.       Undated and unsigned three page letter on Department of Veterans Affairs
                    letterhead, "Subject: Proposed Removal (30 Day Notice)," signature line
                    for Linda M. Titus, R.N. and addressed to Joanne E. Frasure, highlighted
                    and with hand-written corrections.

34

Two pages entitled "Office of Regional Counsel Memorandum" dated March 15, 2000, from Attorney, Office of Regional Counsel (02A). Subject: Proposed Removal - Joanne Frasure.  To: Chief, Human Resources Management Service (05).  Highlighted, with hand-written corrections.  Signed by Kimberly Jacobs.  **[Document redacted in its entirety on the ground of attorney-client privilege.]**

Exhibit RF-8.     Two page letter dated December 21, 1999, from Thomas W. Bucci, Esq. to Ms. Nancy K. Cabanas, re: Joanne E. Frasure v. Dept. of Veterans Affairs.  Yellow post-it note attached to first page with handwritten comments dated January 21, 2000.

Exhibit RF-9.     Three page letter, first page entitled "Proposed Removal: Joanne Frasure, page 3 of 3" with blank signature line for Linda M. Titus, routed 1/21/00 and initialed by V. Christensen, 05B, 05, 02 (Kim Jacobs).  Not initialed by 118 (Linda Titus).  Remaining two pages are page 1 and 2 of the letter addressed to Ms. Joanne E. Frasure.

Exhibit RF-10.     One page print-out entitled Nursing Service, Duty Station 689, containing Position Information for Joanne E. Frasure.

Exhibit RF-11.     One page unsigned and undated letter addressed to Ms. Joanne E. Frasure, from Nancy K. Cabanas, Subj: Disability Retirement.  Routed on 12/3/99 to 05B1, 05B, 05 and initialed by 05B1.

Exhibit RF-12.     Yellow OF-41 Routing and Transmission Slip dated 10/18/99, routed to 05B, 05 and 05-Virginia, from Virginia. Initialed by 05B only.

Exhibit RF-13.     One page unsigned and undated letter, no addressee, first line reads: "Acceptable medical information must include the following (checked) information:" Signature line for Nancy K. Cabanas, routed on 10/8/99 to 05B1, 05B, and 05 – initialed by 05B1 and 05B.

Exhibit RF-14.     One page unsigned and undated form entitled "Release of Information" with signature line for Joanne E. Frasure.

Exhibit RF-15.        One page unsigned and undated letter (first page only, no second page or signature line) addressed to Ms. Joanne E. Frasure, Subj: Determination of Ability to Perform Essential Duty Functions.

*From right-hand side of Removal Folder:*

Exhibit RF-16.        Table of Contents, 1 pg.

*From section labeled "A: DECISION SECTION"*

Exhibit RF-17.        Two page SF 50-B Notification of Personnel Action for Frasure, Joanne E. - Nature of Action "Removal"  effective date 5/19/2000.

Exhibit RF-18.        Two page letter signed by Paul J. McCool to Ms. Joanne E. Frasure, dated May 12, 2000, "Subject: Removal" - stamped "Human Resources Copy." FedEx Tracking Information on last page of letter, signed by V. Christensen on 5/12/2000.

Exhibit RF-19.        One page FedEx tracking results printout dated 5/15/2000.

Exhibit RF-20.        One page entitled "Douglas Factors Statement, Proposed Removal, Joanne Frasure" Prepared and signed by Linda M. Titus, R.N.

Exhibit RF-21.        Two pages entitled "Douglas Factors Statement, Proposed Removal, Joanne Frasure" Prepared and signed by Virginia Christensen, also signed by "Reviewing Officials" Margaret Veazey and Paul J. McCool.

Exhibit RF-22.        One page e-mail printout dated 5/07/00 from Gayatri Rao, Industrial Hygienist, to Virginia L. Christensen, forwarding message from Bernadette R. Montano sent on 11/17/99.  Parts redacted.

Exhibit RF-23.        One page "Report of Contact, Joanne Frasure, Ward Clerk" by Linda Titus.

Exhibit RF-24.        One page e-mail printout from Linda Titus to Joanne Frasure with

responses from Joanne Frasure, re: meeting scheduled for 3/31/00 at 1:00 p.m.

Exhibit RF-25.     One page "Report of Contact" VA Form 119, re: Joanne Frasure, dated 2/09/00, signed by "(illegible), RN."

Exhibit RF-26.     One page "Report of Contact" dated 4/17/00, Subject: Report of Contact - Joanne Frasure, signed by Bernadette Montano, RN/HNM G4E, copy to Joanne 4/18/00 at 9:25 a.m., regarding making of appointments on Monday morning.

Exhibit RF-27.     One page e-mail print-out from Blase Pierce, RN to Joanne Frasure, with responses, dated 4/17/00.   Regarding making of appointments on Monday morning.

Exhibit RF-28.     One page copy of a Routing and Transmittal Slip dated 5/12/00, addressed to President, AFGE Local 1674, signed by Virginia C., re: Decision on Proposed Removal.

Exhibit RF-29.     One page Department of Veterans Affairs Memorandum, from AFGE, Local 1674, Subj: Receipt of Evidence File, to Employee Relations, 05B. Signed by Ron Reynolds.


*From section labeled "B: Response Section"*

Exhibit RF-30.     One page signed by Richard N. Daniels, entitled "Joanne Frasure - Response to Proposed Removal" dated 4/21/2000.

Exhibit RF-31.     Four pages entitled "Supplemental Statement of the Case" (Veteran Disability Adjudication)


*From section labeled "C: Proposal Section"*

Exhibit RF-32.     Three page letter on Department of Veterans Affairs letterhead dated

        3/22/2000, addressed to Ms. Joanne E. Frasure, subject: Proposed Removal (30 Day Notice).  Signed by Linda M. Titus, R.N.  Stamp in lower right corner of last page for certification by Joanne Frasure with hand-written note by Linda Titus: "employee refused to sign – 3/31/00."

Exhibit RF-33.      One page Department of Veterans Affairs Memorandum, from AFGE, Local 1674, Subj: Receipt of Evidence File, to Employee Relations, 05B. Signed by Ron Reynolds on 4/4/00.

*From section labeled "D1: Failure to Respond to Request for Medical Information"*

Exhibit RF-34.      Fax confirmation sheet for four-page fax from Virginia Christensen to Karen Kubic dated 12/3/99.

Exhibit RF-35.      Two page e-mail printout, from Virginia L. Christensen to Linda Titus, with responses, dated 11/23/99.  Subject: No response - what action?

Exhibit RF-36.      One page e-mail printout, from Virginia L. Christensen to Esther Nash, M.D. dated 11/23/99, Subject: Frasure response.

Exhibit RF-37.      Two page letter on Department of Veterans Affairs Letterhead , dated 10/28/99, to Ms. Joanne E. Frasure, from Nancy K. Cabanas, SUBJ: Determination of Ability to Perform Essential Duty Functions. Certification in lower right-hand corner signed by Joanne Frasure on 11/1/99.   With enclosed "Release of Information" form.

Exhibit RF-38.      One page OF 8, Transfer from MAS to Nursing Service, signed by Gerald Beccia on 2/1/95, Margo Veazey on 2/1/95, Kevin R. Brown on 2/2/95 and certified received by Joanne Frasure on 4/19/99.

Exhibit RF-39.      Four page document entitled "Ward Clerk (Health Unit Coordinator); Nursing Service, PD # 1918A, GS-679-5."

Exhibit RF-40.      One page document entitled "Performance Standards GS-5 Medical Clerk."  Certified received by Joanne Frasure on 4/19/99.

*From Section labeled "D2: Inability to Perform Essential Functions of Position"*

Exhibit RF-41.     One page, handwritten on Department of Veterans Affairs letterhead, dated 8/24/98, Re: Joanne Frasure, signed by Jonathan Graver, M.D.

Exhibit RF-42.     One page, handwritten note, dated 8/24/98 and 2/25/99, Re: Joanne Frasure, signed by (illegible) M.D.

Exhibit RF-43.     One page e-mail print-out from Virginia Christensen to Kathleen Yuckienuz, Bernadette Montano, Joe Castrodonatti, and Steve Sloane, dated 9/15/99, Subj: Joanne Frasure Undue Burden

Exhibit RF-44.     One page handwritten note to "Virginia" from Steve Sloan.

Exhibit RF-45.     One page print-out entitled "AQS Case Query by Name" dated 1/13/00.

Exhibit RF-46.     Two page print-out entitled "AQS Injured Worker Case Query," name: Joanne E. Frasure, dated 1/13/00.

Exhibit RF-47.     One page print-out entitled "AQS Injured Worker Case Query," name Joanne E. Frasure, dated 1/13/00.

*From Section labeled "D3: Disrespectful Conduct Toward Supervisor"*

Exhibit RF-48.     One page "Report of Contact" by Linda Titus dated 12/20/99, re: Disability Retirement letter.

Exhibit RF-49.     One page "Report of Contact" by Linda Titus dated 12/20/99 re: Interviews for Patient Service Assistant.

Exhibit RF-50.     One page typed and hand-written document dated 1/7/00, from Bernadette Montano, Subj: Report of Contact - Joanne Frasure, regarding entering of transfers into computer.

Exhibit RF-51.     One page e-mail print-out from Bernadette Montano to "Ralph/Rachel"

Subj: Follow-up: Entering of transfers into the Computer.

Exhibit RF-52.       One page e-mail print-out from Bernadette Montano to Joanne Frasure, dated 1/13/00, Subj: Transfer of Patients.

Exhibit RF-53.       One page memo dated 7/22/99 Subject: ROC w/JoAnne Frasure/G4E, to Linda Titus, from Linda Sheehan.  Regarding refusal to answer question.

Exhibit RF-54.       One page memo dated 7/28/99 Subject: Meeting with JoAnne Frasure, Miriam Williamson, Bernadette Montano, signed by Linda Sheehan. Regarding hostility concerning Lead Medical Clerk appointment of Linda Sheehan.

Exhibit RF-55.       One page memo dated 10/29/99 Subject: ROC w/Joanne Frasure, from Linda Sheehan to Linda Titus.  Regarding hostility by Joanne Frasure.

Exhibit RF-56.       One page memo dated 11/2/99, Subject: Meeting with Joanne Frasure, Linda Titus, Linda Sheehan, John Dynan [sic], Ardie Gooch.  Signed by Linda Sheehan.  Regarding hostility between Joanne Frasure and Linda Sheehan.

Exhibit RF-57.       One page memo dated 11/15/99, From Linda Sheehan to Linda Titus, Subj: Joanne Frasure.  Regarding Joanne Frasure pushing chart rack into her.

Exhibit RF-58.       One page e-mail print-out dated 12/30/99 from Linda Sheehan to Linda Titus, Subj: ROC w/J. Frasure.  Regarding another incident with Frasure.

Exhibit RF-59.       One page memo dated 12/30/99 from Linda Sheehan to Linda Titus, Subj: Joanne Frasure.  Regarding another incident with Frasure.

Exhibit RF-60.       One page e-mail print-out dated 1/10/00 from Ann Wernicke to Linda Sheehan, Subj: Admission correction.

Exhibit RF-61.       One page Department of Veterans Affairs Report of Contact dated 1/13/00 from (illegible) Rosa, RN to Bernadette Montano.  Regarding Frasure's

refusal to talk to patient on phone.

*From Section labeled "D4: Disrespectful Conduct Toward Fellow Employee"*

Exhibit RF-62.    One page memo dated 1/4/2000 from Bernadette Montano, Subj: Report of Contact-Jonathan Guest. Regarding hang-up by Joanne Frasure.

Exhibit RF-63.    One page Department of Veterans Affairs Report of Contact dated 1/12/00 from Blase Price, RN regarding Joanne Frasure hang-ups and swearing.

Exhibit RF-64.    One page memo dated 1/12/00 by Linda Titus, Report of Contact, Jonathan Guest report of hang-up and swearing by Joanne Frasure.

*From Section labeled "E: Regulation Section"*

Exhibit RF-65.    Three page Department of Veterans Affairs Healthcare System Policy No. 05-44 dated September 20, 1999, entitled "Employee Conduct and Workplace Relationships." Last page is Attachment A "Department of Veterans Affairs Regulations Concerning Conduct and Ethics."

Exhibit RF-66.    Two pages entitled "IV. Employee Rights and Responsibilities" and "'CORE VALUES.'"

*From Section labeled "F: Disability Retirement Opportunity"*

Exhibit RF-67.    One page memo, Report of Contact, Joanne Frasure, by Linda Titus, dated 12/20/99. Regarding Disability Retirement presentation to Joanne Frasure.

Exhibit RF-68.    One page letter on Department of Veterans Affairs letterhead, dated December 16, 1999 from Nancy K. Cabanas to Ms. Joanne E. Frasure, SUBJ: Disability Retirement. Note in lower right hand corner that Joanne Frasure refused to sign the certification that she received a copy of the letter.

Exhibit RF-69.          One page, copy of aforementioned letter, without certification section.

Exhibit RF-70.          One page print-out, Joanne Frasure, annual salary for the period 11/02/1996 to 11/01/1999.

Exhibit RF-71.          Three page print-out, FERS Employee Data for Joanne Frasure.

Exhibit RF-72.          One page print-out, Retirement Service Computation Date for Joanne Frasure.

Exhibit RF-73.          Copy of 87 page brochure entitled "Disability Retirement Law for Federal Government Employees."


*From Section labeled "G: Past Discipline Section"*

Exhibit RF-74.          One page letter on Department of Veterans Affairs letterhead, dated 8/18/99 from Linda M. Titus to Joanne Frasure, Subject: Proposed Reprimand (14 Day Notice).  Certification section in lower right-hand corner signed and dated by Joanne Frasure on 8/18/99.

Exhibit RF-75.          One page letter on Department of Veterans Affairs letterhead, no date, from Linda M. Titus to Joanne Frasure, Subject: Reprimand.  Certification section in lower right-hand corner signed and dated by Joanne Frasure on 9/2/99.

*[End of Removal Folder exhibits]*

Exhibit VA-76.          Selection Certificate Memorandum (to GS-6) from Linda Titus re Certificate for Lead Medical Clerk, MPA no. 99-63, dated April 16, 1999.

Exhibit VA-77.          Selection Certificate Memorandum (to GS-7) from Linda Titus, ACNS, re Certificate for Lead Medical Clerk, MPA no. 99-63, dated April 16, 1999.

Exhibit VA-78.          Workstation assessment by Gayatri Rao.

Exhibit VA-79.      Email from Linda Sheehan to Linda Titus re Ms. Frasure dated February
                    3, 2000.

Exhibit VA-80.      Report of Contact by Bernadette Montano re Jonathan Guest dated May
                    16, 2000.

Exhibit VA-81.      Handwritten notes by Virginia Christensen re Linda Titus comments on
                    Plaintiff's removal response dated May 1.

Exhibit VA-82.      Initial Contact Sheet, Office of Resolution Management, dated November
                    29, 1999 (2 pages).

Exhibit VA-83.      Social Security Benefits application, Joanne Frasure.
Exhibit VA-84.      Social Security Benefits summary, Joanne Frasure.

Exhibit VA-85.      List titled "What I Need To Return To Work To Feel Whole Again"
                    signed by Joanne Frasure, undated, 1 page.

Exhibit VA-86.      Nursing Service Master Staffing Roster dated August 30, 1999, 15 pages.

Exhibit VA-87.      Organization chart, VA Connecticut Healthcare System, 1 page.

Exhibit VA-88.      Nursing Service Organizational Chart, VA Connecticut Healthcare
                    System, 1 page.


Depositions:               None.


Plaintiff's Requests for Jury Instructions:

See Plaintiff's Proposed Jury Instructions and Special Verdict Form, filed separately on this date.

43

<u>Defendant's Proposed Jury Instructions</u>:

See Defendant's Proposed Jury Instructions and Special Verdict Form, filed separately this date.

<u>Evidentiary problems</u>:                    Defendant objects to the admission of any of Plaintiff's medical records unless it is established it was provided to VA Employee Medical Service, Human Resources, or Plaintiff's supervisors.

In light of the Court's Ruling and Order on summary judgment dismissing the claim based on failure to promote, Defendant seeks to exclude all evidence regarding alleged discrimination or irregularities in the non-selection. Defendant does not object to evidence regarding identification of the decisionmakers in the non-selection or Plaintiff's complaint of discrimination regarding the non-selection.

Both parties reserve the right to raise evidentiary problems until after they have had an opportunity to review and analyze the other party's submission of his or her components to the Joint Trial Memorandum.

<u>Defendant's proposed findings and conclusions</u>:

<u>For the jury</u>:                    <u>See</u> Plaintiff's Proposed Jury Instructions and Special Verdict Form, filed separately on this date.

<u>See</u> Defendant's Proposed Jury Instructions and Special Verdict Form, filed separately on this date.

44

<u>For the Court</u>:

Plaintiff failed to mitigate damages.

Plaintiff is not entitled to backpay.

Reinstatement of Plaintiff is not appropriate.

Plaintiff is not entitled to frontpay in lieu of reinstatement.

(After trial)  Plaintiff is not entitled to attorney's fees.


<u>Trial time</u>:                                    Three to five days. (Defendant's estimate)

<u>Further proceedings</u>:                  None.

<u>Election for trial by magistrate</u>:    The parties have consented to trial by magistrate.  By Order
                                                       dated December 13, 2001, this matter was referred to
                                                       Magistrate Judge William I. Garfinkel for trial.


Respectfully submitted,

PLAINTIFF,
JOANNE FRASURE


By_____        Date_____
Thomas W. Bucci
Willinger, Willinger & Bucci
855 Main Street, 5th Floor
Bridgeport, CT 06604
(203) 366-3939
Fed. Bar. No. ct07805

DEFENDANT,
R. JAMES NICHOLSON,
SECRETARY OF VETERANS AFFAIRS

KEVIN J. O'CONNOR
UNITED STATES ATTORNEY


By_____          Date_____
Carolyn A. Ikari
ASSISTANT U.S. ATTORNEY
450 Main Street, Room 328
Hartford, Connecticut  06103
(860) 947-1101
Fed. Bar No. ct13437

## **CERTIFICATION OF SERVICE**

I hereby certify that a copy of the Joint Trial Memorandum has been mailed, postage prepaid, via first-class mail, this 12th day of August, 2005, to:

Carolyn A. Ikari
ASSISTANT U.S. ATTORNEY
450 Main Street, Room 328
Hartford, Connecticut  06103

_____
Thomas W. Bucci